*221 Van Voorhis, J.
The decision of this appeal depends upon what is the duty of a broker ¡member of the New York Stock Exchange to the owner of stolen shares of stock when delivered for sale and transfer by the thief or one of his confederates. The duty of such a broker does not depend upon whether the owner of the shares has been negligent in safeguarding them or upon whether the thief was placed by the owner, acting in good faith, in a position which enabled him to steal the stock. The cause of action is conversion. The defendant, to whom these shares of stock were delivered for sale, and which sold them and paid the purchase price to a confederate of the thief, either converted this stock or it did not do so, but if there was a conversion it is not a defense that plaintiff’s assignor (Bache & Co.) may have been negligent in handling them.
Negligence of an owner facilitating a common-law larceny of tangible personal property is no defense to an action for conversion of the stolen goods against the vendee of the thief, even though he has bought in good faith from the thief or from a receiver of the stolen property (Silsbury v. McCoon, 3 N. Y. 379, 383-384; Menzel v. List, 49 Misc 2d 300, 315). “ An owner does not forfeit his ownership for failure to take good care” of intangible personal property ‘‘ any more than he forfeits it for failure to take good care of his watch ” (People’s Trust Co. v. Smith, 215 N. Y. 488, 493). If the title of the thief or his receiver were voidable only, the vendee acquires good title if the transaction occurs before notice of avoidance is given (Stanton Motor Corp. v. Rosetti, 11 A D 2d 296; cf. Uniform Commercial Code, § 2-403, subd. [1]). Negotiable instruments and stock transfers are to some extent governed by statutes but, unless the title of a vendee thereof is expressly protected by some statute, the vendee is held for conversion of the negotiable paper or security growing out of “ an act of wrongdoing in meddling with and selling the property of another ” (Casey v. Kastel, 237 N. Y. 305, 312; Pierpoint v. Hoyt, 260 N. Y. 26). It is true that an action for conversion is based on the right to possession, but plaintiff claims to be entitled to possession of this stock on the ground that it was the owner (McCoy v. American Express Co., 253 N. Y. 477). Title is, therefore, in issue in this action.
The transactions in suit occurred in March, 1960. The former Negotiable Instruments Law and Stock Transfer Act (Personal *222 Property Law, former art. 6) were then in effect. The stock in controversy belonged to plaintiff’s assignor. Defendant exercised dominion over what was, in actuality, Bache & Co. ’s property by selling it and paying the proceeds to a person to whom it did not belong. The issue here presented is whether defendant was protected in doing so by the Negotiable Instruments Law or the Stock Transfer Act as a bona fide purchaser of the shares. A selling broker, which defendant was, is recognized as a “ purchaser ” under these statutes for these purposes (cf. Uniform Commercial Code, § 8-304, subd. [1], which, in this respect, is declaratory of the existing law).
A holder in due course of negotiable instruments acquires good title although the paper was stolen and transferred by the thief (Turnbull v. Bowyer, 40 N. Y. 456; Gruntal v. United States Fid. & Guar. Co., 254 N. Y. 468; cf. Uniform Commercial Code, § 8-301). A person would be a holder in due course of a negotiable instrument if he acquired it for value and without notice where it was payable to bearer (Negotiable Instruments Law, § 20; Uniform Commercial Code, § 3-104), and a negotiable instrument was treated as payable to bearer under the Negotiable Instruments Law in effect at the time of these transactions if it was payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable (Negotiable Instruments Law, § 28, subd. 3, amd. by L. 1960, ch. 726, and carried forward, as further amended, into Uniform Commercial Code, § 3-405). Although stock certificates have some of the qualities of negotiable instruments, they were not negotiable instruments under the definition of section 20 of the Negotiable Instruments Law which furnishes useful analogies, as, for example, in the case of a stock certificate indorsed by the registered owner in blank (Turnbull v. Longacre Bank, 249 N. Y. 159) to which a bona fide transferee has similar rights to the holder in due course of a bearer bond (Gruntal v. United States Fid. & Guar. Co., 254 N. Y. 468, supra). The decision of this appeal does not depend in every respect upon differences between the Negotiable Instruments Law and the Stock Transfer Act nor, it would appear, on differences between those statutes and the Uniform Commercial Code which also furnishes useful analogies without being controlling. We must look, however, to the Stock Transfer Act (former Personal Property Law, art. 6) to *223 find protection for a bona fide purchaser in defendant’s position if defendant is to escape being governed by the common-law rule that a purchaser for value and in good faith of stolen personal property is legally responsible to the owner. The applicable sections of that article are 162,166 and 168 which will be analyzed after a brief statement of the facts.
In this instance the certificates representing the stolen shares were registered in the name of Jack Arbetell. An unknown man purporting to bear that name opened a new account with defendant, delivered the certificates to defendant, and received from defendant $76,284.71, being the proceeds of sale. Rule 405 of the New York Stock Exchange, then and now in force, provides that ‘ ‘ [A broker must] use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried ”.
The only effort made by defendant to “ know its customer ” in this instance, as was testified by its customer’s man, was that a new customer calling himself Jack Arbetell introduced himself on the telephone by saying that he would like to open an account “to transact some business ” which involved selling securities, and that he appeared at the office following this telephone conversation, and identified himself by showing ‘‘ one or two cards ” with the name Jack Arbetell on them. The best recollection of the witness was that one of the cards was a business card. He did not recall what the other one was. This was the only evidence of identification that was produced. The stock indorsements signed by the new customer were witnessed by employees of defendant who certified to his identity without knowing who he was except as he had thus identified himself.
The stock in suit, belonging to plaintiff’s assignor, Bache & Co., had been surreptitiously transferred to the name of Arbetell by a faithless employee of Bache, who removed the certificates from Bache’s mail when they were returned by the transfer agents. The certificates had been indorsed in blank when sold to Bache, and were supposed to have been forwarded by this employee to the transfer agents for transfer on the books of the corporations to Bache & Co. either for its own account or to be held for a customer or customers in Bache’s name as a street name.
*224 The applicable provisions of statute, in effect at the time of these transactions, were, as above stated, sections 162, 166 and 168 of the Personal Property Law. Section 166 provided: “ The delivery of a certificate to transfer title in accordance with the provisions of section one hundred and sixty-two is effectual, except as provided in section one hundred and sixty-eight, though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title.”
Section 168 provides, insofar as material, that “ If the indorsement or delivery of a certificate ” was procured by fraud or duress or ‘ ‘ If the delivery of a certificate was made * * * Without authority from the owner ” the possession of the certificate may be reclaimed and the transfer rescinded unless “ The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful ”.
As appears from the sentence quoted from section 166, the application of both of these sections is limited to the ‘ ‘ delivery of a certificate to transfer title in accordance with the provisions of section one hundred and sixty-two ”.
The material portion of the latter section read:
* ‘ Title to a certificate and to the shares represented thereby can be transferred only,
“ (a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby ”. (Italics supplied.)
Respondent asserts that what happened here is enough, in itself, to bring the indorsements within the Personal Property Law, as it then read, without regard to who actually owned the shares or whether there were or were not one or more Jack Arbetells in existence, and without reference to whatever knowledge of the circumstances was possessed by Bache & Co. or what effort was made by Walston & Co., Inc. to verify who it was that opened the account in the name of Jack Arbetell or who signed the certificates. We think that the requirements of “ good faith ” (§ 168) and that a certificate be indorsed “ by the person appearing by the certificate to be the owner of the shares represented thereby ” (§ 162, subd. [a]) impose greater duties upon the selling broker than merely to see that the certificate has been *225 signed by someone, no matter by whom, in the name of the person (existent or nonexistent) in whose name it is registered and without making serious effort to ascertain with whom the broker is dealing.
It is true that in the action which arose out of the same swindle which was decided by the United States District Court for the District of New Jersey there was direct evidence that the stock certificates were delivered to the selling broker by a person who was not Jack Arbetell. Here, however, the testimony of the employee of Bache who handled the operation inside the office and stole the certificates is to the effect that Bache & Co. had no customer by the name of Jack Arbetell, that he knew of no person bearing that name, that he had never been given the right to use the name and had no reason to believe that there was such a person in existence. After removing the certificates from Bache & Co.’s mail, he testified that he turned them over to a confederate named Yudelowitz. This was sufficient to create a strong inference that the stock certificates were neither delivered to defendant by any Jack Arbetell nor indorsed by such a person and that reasonable inquiry by defendant respecting the identity of its customer would have disclosed the facts.
Forgery of an indorsement of a stock certificate does not protect a transferee any more than it does in the case of a negotiable instrument. Even under subdivision 3 of section 28 of the former Negotiable Instruments Law (which never applied to stock transfers) it has been held that the indorsement of the name of a fictitious or nonexistent payee is forgery and does not protect the transferee of the paper unless the maker knew the payee to be fictitious (United Cigar Stores Co. v. American Raw Silk Co., 184 App. Div. 217, affd. 229 N. Y. 532). Bache & Co. had no knowledge that these shares had been issued in the name of Jack Arbetell, which was carefully concealed from it through falsification of books and otherwise by Norman Mais, the employee who stole the certificates. Bache & Co. is not chargeable with knowledge possessed by an employee while stealing its property or acting otherwise in hostility to its interests (Benedict v. Arnoux, 154 N. Y. 715; Otsego Aviation Serv. v. Glens Falls Ins. Co., 277 App. Div. 612, 618-620; New York Cent. Ins. Co. v. National Protection Ins. Co., 14 N. Y. 85; Utica Ins. Co. v. Toledo Ins. Co., 17 Barb. 132). The basis on which a principal is charged with *226 knowledge of its agent under such decisions as Constant v. University of Rochester (111 N. Y. 604) or Title Guar. & Trust Co. v. Pam (232 N. Y. 441, 453) is that it is presumed that the agent will normally communicate the information to his principal in the course of the performance of his duties (Corrigan v. Bobbs-Merrill Co., 228 N. Y. 58, 69). Such an inference certainly is not and should not be indulged in a situation where an employee is stealing from his employer. The employer would be the last person to whom the thief would normally communicate such information, a conclusion that is fortified in this instance by Mais’ manipulation of Bache’s records in a successful endeavor to keep Bache in ignorance of what he was doing.
The object of rule 405 of the New York Stock Exchange is described in Israels’ commentary (McKinney’s Cons. Laws of N. Y., Book 62½, pt. 3, pp. 221-222) to section 8-304 of the Uniform Commercial Code (the comment applies to the transactions in suit although the Uniform Commercial Code does not): “ The jeopardy of the selling broker is broadened by the rules and practice of the organized markets which require that he ‘ know his customer ’.’’ Even the Uniform Commercial Code, which apparently modifies the law in this State somewhat in favor of the selling broker by relaxing partially the rigor of the Casey v. Kastel (237 N. Y. 305, supra) rule, provides by section 8-318 that the test of good faith of a selling broker includes ‘‘ observance of reasonable commercial standards if he is in the business of buying, selling or otherwise dealing with securities ”. It would seem that rule 405 of the New York Stock Exchange formulates what are “ reasonable commercial standards ” in this context by requiring the broker to use due diligence to learn the essential facts relative to its customers. The obligation of a broker selling securities to observe reasonable commercial standards was expressed by section 8-318 of the Uniform Commercial Code but was not created by it. The performance of these duties is an element of what constitutes good faith under section 168 of the Personal Property Law in effect at the time of these transactions. Selling brokers cannot shirk these duties and at the same time claim to have acted in good faith without being charged with knowledge of facts which compliance with reasonable commercial standards would have disclosed (Fidelity & Deposit Co. v. Queens County Trust Co., 226 N. Y. 225).
*227 Operating rules of a railroad company were held to have probative force in Danbois v. New York Cent. R. R. Co. (12 N Y 2d 234, 236-240) and a fortiori the same is true of rules of a stock exchange, of which Bache & Co. and defendant were both members (Franklin v. Dick, 262 App. Div. 299, 301-303, affd. 287 N. Y. 656). Nothing in former sections 162,166 or 168 of the Personal Property Law makes the duty of a selling broker to know his customer null and void or inapplicable to the circumstances of this case.
It is argued for defendant-respondent that these stock certificates are to be regarded as having been indorsed in blank inasmuch as the former certificates representing the same shares were in that, form when originally acquired by Bache & Co., that the issuance of the new certificates in the name of Jack Arbetell should be regarded as a nullity since it was unauthorized by Bache & Co. and that defendant, Walston & Co., Inc., should be deemed in law to occupy the same position in which it would have been if it had received the former certificates indorsed in blank as they were when delivered to Bache & Co. This reasoning overlooks that it was a purpose of these sections of the Personal Property Law, and still is of the corresponding provisions of the Uniform Commercial Code, to furnish some protection to the owner of stolen stock by requiring the selling broker to use due diligence to know his customer. It is the policy of the law, to be sure, to protect the selling broker where he comes into possession of a certificate indorsed by the true owner in blank, in which instance he has the right to assume (absent notice to the contrary) that the owner would take the same care of the security that he would of a bearer bond and be subjected to the same consequences in case of theft (Turnbull v. Longacre Bank, supra; Gruntal v. United States Fid. & Guar. Co., supra). Even in the sale of a bearer bond there is a duty to take some steps to know who the customer is. The Stock Exchange rules recognize that in the sale and transfer of investment securities a greater duty of inquiry is imposed than exists upon the discount of commercial paper (Manufacturers & Traders Trust Co. v. Sapowitch, 296 N. Y. 226; Hall v. Bank of Blasdell, 306 N. Y. 336). The selling broker is charged with a somewhat greater responsibility where he receives a stock certificate issued in a particular name. In such instance he is required to use due diligence to ascertain *228 the identity of the person with whom he is dealing and who signs the indorsement.
The dissenting opinion recognizes that the “ imposter ” rule does not apply to this case (Cohen v. Lincoln Sav. Bank, 275 N. Y. 399; Halsey v. Bank of New York, 270 N. Y. 134).
Since we differ with the trial court in certain material respects regarding what are the issues underlying a determination of whether defendant is liable, it is necessary that there be a new trial. The points of difference have been outlined in this opinion and are, specifically, as follows:
These stock certificates, when presented to defendant, were not indorsed in blank except as the indorsements printed on the back may have been signed in defendant’s office by a person assuming to be Jack Arbetell. The evidence does not indicate whether the name of “ Walston & Co., Inc.” was stamped upon the blank form of the indorsement as assignee before or after it was signed in the name of Jack Arbetell. In either event under subdivision (a) of former section 162 of the Personal Property Law it was required that the certificates be indorsed by the person appearing by the certificate to be the owner of the shares represented thereby, viz., Jack Arbetell. A stock certificate is not delivered in accordance with the provisions of section 162, and the transfer is, therefore, not protected by sections 166 and 168, if the signature upon the indorsement is forged. This would be true whether or not Jack Arbetell was a fictitious person, inasmuch as subdivision 3 of section 28 of the former Negotiable Instruments Law did not apply to stock transfers (Mohr v. Penney Co., 242 App. Div. 385, 387-388, affd. 270 N. Y. 606) and, even if it did, it would not render the certificate payable to bearer even though Jack Arbetell were a fictitious person unless knowledge thereof were brought home to Bache & Co. which it was not (United Cigar Stores Co. v. American Raw Silk Co., 184 App. Div. 217, affd. 229 N. Y. 532, supra; Hall v. Bank of Blasdell, supra, p. 344). The stock certificates in the name of Jack Arbetell when delivered to defendant are not deemed payable to bearer for the reason that the former stock certificates representing the same shares were in that form when previously delivered to Bache & Co.
The question of title as affected by the Stock Transfer Act (Personal Property Law, former §§ 162, 166, 168) is at issue in *229 this case, as is acknowledged in defendant-respondent’s brief and in the dissenting opinion.
In order to establish defendant’s status as a bona fide purchaser for value it was necessary to show more than that “ it made payment to Arbetell or somebody who called himself Arbetell.” In order to establish “ good faith” on the part of defendant as transferee of these shares of stock under former section 168 (subd. [d], par. 1) of the Personal Property Law, it was necessary for defendant to establish that in receiving and selling the shares for the account of a new customer calling himself Jack Arbetell it observed reasonable commercial standards, which included the exercise of due diligence to learn the essential facts relative to this customer, his account and these sales orders.
Questions of fact are presented by these principles of decision.
A new trial should be granted, in accordance with this opinion, with costs to appellant to abide the event.