**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Plaintiffs-Appellees,**

v.

**CITY NATIONAL BANK OF DETROIT et al., Defendants,**

**Joseph Pagoto, Defendant-Appellant.**

No. 78–1525.

United States Court of Appeals, Sixth Circuit.

Argued July 9, 1980.

Decided Aug. 21, 1980.

Charles Gottlieb, Gottlieb & Goren, Detroit, Mich., Sam F. Lowe, Jr., Atlanta, Ga., for defendant-appellant.

W. P. Cooney, Jr., John P. Jacobs, Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., Robert K. Lockwood, Detroit, Mich., for plaintiffs-appellees.

Before MERRITT, KENNEDY and MARTIN, Circuit Judges.

PER CURIAM.

This is an appeal from a declaratory judgment action in which Judge DeMascio held that Merrill Lynch were entitled to recover a portfolio of securities. On April 24, 1969, Merrill Lynch mailed the securities in a package from its New York office to the manager of its Detroit office; the certificates were stolen and ultimately one Daniel Cimini was convicted of the theft. The face of the certificates contained the stamp of Merrill Lynch which certified that they were the owners of the certificates; the back of some of the certificates bore the legend "Transfer only as directed on instructions of Merrill Lynch, Pierce, Fenner & Smith, Inc." The back of other of the certificates bore, in addition to that restrictive endorsement, a statement to the following effect:

For value received _____ hereby sell, assign and transfer unto "Transfer only as directed on instructions of Merrill Lynch, Pierce, Fenner & Smith Incorporated" shares of the capital stock represented by the within Certificate; and do hereby irrevocably constitute and appoint "Merrill Lynch, Pierce, Fenner & Smith, Incorporated" Attorney for transfer the said stock on the books of the within named Corporation with full power of substitution in the premises.

/s/ George Leners

While some of these endorsements were obliterated by chemicals used by the FBI in its investigation at the criminal trial, all the certificates bore the legends at the time they were sent.

Less than three months after the certificates—which were worth some $140,000—were stolen, Cimini negotiated them to Joseph Pagoto as "security" on a debt which arose when Pagoto built a house for him. Significantly, that indebtedness was already secured by a lien on the property, and the efficacy of that lien has never been questioned. Pagoto in turn used the certificates to secure a $20,000 loan from the City National Bank of Detroit.

At the trial of the declaratory judgment action Pagoto and City National both argued that they were holders in due course of the certificates in that they purchased them for value, in good faith, and without notice of any adverse claim to them. The Court found for Merrill Lynch, holding that all of these elements had not been established by either defendant. City National did not appeal.

Pagoto argues that (a) the certificates were endorsed in blank and readily negotiable, (b) that the Uniform Commercial Code policy of ready negotiability mandates a finding in his behalf, (c) that he was without notice of irregularities at the time of the transfer of the certificates from Cimini, (d) that he gave value, (e) that he took in good faith, (f) that Merrill Lynch was negligent at the outset and is thereby estopped from proceeding, and (g) that the Court had erred in allowing testimony as to dealings between Cimini and Pagoto which occurred after the transfer at issue.

These contentions are plainly without merit. Pagoto's statement that he was not suspicious when Cimini proffered $140,000 of securities in return for a previously secured $20,000 debt was deemed incredible by the District Court, and we agree with that finding. This $120,000 overpayment also vitiates any claim that Pagoto gave full value for the certificates. The restrictive endorsements would have given any reasonable person notice that something may have been amiss; were we to accept Pagoto's argument that he could accept the restrictively endorsed certificates on blind faith, we would allow the Pagotos of this world to be the final arbiters of their own destiny. The Uniform Commercial Code definition of "notice" partakes of an objective standard by which the reasonableness of Pagoto's protestations that *nothing* about the transaction suggested impropriety to him must be judged. *See Uniform Commercial Code*, § 1-201(25)(c); *cf. Seattle First National Bank v. Randall*, 532 F.2d 1291 (9th Cir. 1976); *Hollywood National Bank v. International Business Machines Corp.*, 38 Cal. App.3d 607, 113 Cal.Rptr. 494 (1974); *Von Gohren v. Pacific National Bank of Washington*, Wash.App., 8 Wash.App. 245, 505 P.2d 467 (1973). Finally, good faith requires "honesty in fact," and we agree with the District Court that the nature of the transaction between Cimini and Pagoto, as shown by the fact that no records were kept of them despite Pagoto's wont to keep records, did not measure up to that standard. The negligence, if any, of Merrill Lynch is irrelevant to this case. *See Hartford Accident and Indemnity Co. v. Walston and Co.*, N.Y., 21 N.Y.2d 219, 287 N.Y.S.2d 58, 234 N.E.2d 230 (1967).

Accordingly, the judgment of the District Court is affirmed.