**Park State Bank, an Illinois Banking Corporation, Plaintiff-Appellee, v. Arena Auto Auction, Inc., an Illinois Corporation, Defendant-Appellant.**

Gen. No. 64–103.

Second District.

May 11, 1965.

Neistein, Richman & Hauslinger, of Chicago (Arthur Abraham, of counsel), for appellant.

Foster A. Smith and David F. Smith, of Loves Park, for appellee.

MR. JUSTICE PETERSEN delivered the opinion of the Court.

This case comes into Court by reason of certain mistakes made by employees of the involved parties following the normal routine of customary business details so characteristic of the rapidly changing society and world in which we live.

Defendant-Appellant, Arena Auto Auction, Inc., created the problem brought to court by the issuance of its check dated December 17, 1963, and by the mailing of it to Plunkett Auto Sales, Rockford, Illinois. For clarity's sake, we will refer to the Rockford Plunkett and the Alabama Plunkett by these

geographic designations rather than by their corporate names which, to this Court, are almost identical. Rockford Tom Plunkett might well have felt, upon receiving said check, that he was the recipient of some give-away or promotional scheme, for it later appears that he had sold no merchandise, a fact of which he was well aware, to the Defendant-Appellant. We might visualize Rockford Tom Plunkett as a fast-thinking, old-time horse trader, now engaged in the business of buying and selling used automobiles. He, being well known to the Plaintiff-Appellee Bank by reason of his borrowing and having cashed one previous check of the Defendant-Appellant, after holding this check from December 17th or 18th until January 3rd, 1964, and after due reflection on his part, signed his name to the check and presented it for payment to Charlotte Parish, head teller, who, promptly and without question, turned over to him the check-designated sum of $1,435.

On January 9, 1964, the said check was returned to the Plaintiff-Appellee Bank by reason of a stop payment order by the maker, and came into the hands of the Assistant Vice-President, Mr. Marconi, whose duties are to assist in the operation of a financial institution, to know its customers, and, equally, to earn a profit for the Plaintiff-Appellee. Vice-President Marconi promptly called his personal friend, Jack Clark of the Arena Auto Auction, Inc., who, to cover the shortcomings of his secretary, called at the Plaintiff-Appellee Bank on January 10, 1964, to make explanation. Now, Jack Clark, being in the business of operating an automobile auction and using the speed of their operation to explain the error, commented thus: "This guy here (meaning Rockford Tom Plunkett) wasn't supposed to get the check. It was another Plunkett in Alabama. But Alabama Plunkett wasn't on our books, so that's why our gals sent the

check to Rockford Plunkett, and that's why we stopped payment on our check."

But, to put the frosting on the cake, or as Counsel put it, to add insult to injury, Defendant-Appellant, Arena Auto Auction, Inc., issued their second check in the same amount to the same payee, and again sent the check to Rockford Tom Plunkett. Again we can visualize quick-thinking Rockford Tom Plunkett's surprise, for this truly must come from the money tree. He loses no time in going to the same financial institution as before. Not so fortunate on this second occasion, poor Rockford Tom Plunkett, as he tendered the second check, is questioned as to why payment was stopped on the first one. In his effort to secure quick payment he stated, "This check is to replace the first. Cash this check, give me back the first one, and I will return it to the Arena Auto Auction."

Mindful of the first experience, the Vice-President was reluctant to follow this advice and informed poor Tom that he was in difficulty. Rockford Tom Plunkett, seeing that the Vice-President could be right, promptly left the State of Illinois and established his abode in a more sunny climate. This is verified by Vice-President Marconi, who stated that he held a telephone conversation with Mr. Plunkett who was then in a restaurant in Amory, Mississippi. Despite the Vice-President's appeal to Tom to come home and correct his mistake, which is again borne out by the testimony as follows: "All I can tell you is you'd better come up here and make this good." It was to no avail. Rockford Tom Plunkett said, "You will never find me." Sad, but true; Vice-President Marconi tried: "Rockford Tom Plunkett wasn't there and I don't know where he is now."

So now we find the Plaintiff-Appellee Bank in the embarrassing position of having cashed a check and having had payment of that check stopped. Desirous

237

of not losing money, they start suit to recover from the Arena Auto Auction. Judge Dusher of the Circuit Court of Winnebago decided in favor of the Plaintiff and against the Arena Auto Auction, Inc., who appeals to this Court.

From a purely legal point of view, there are two questions raised. First, did Rockford Tom Plunkett commit a forgery by signing his own name to a check ostensibly issued to him. Without passing on the very technical question of whether or not these facts constitute a forgery, this is apparently admitted by all parties concerned, for they cite cases in the Trial Court and in this Court, holding that a forgery passes no title by which one can recover as a bar to the Plaintiff-Appellee recovering. The Plaintiff-Appellee Bank relies upon Chapter 26, Illinois Revised Statutes, 1963, Section 3–406; which, being a new section of our Commercial Code, is as follows:

"Any person who by his negligence substantially contributed to material alteration of the instrument or the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith in accordance with reasonable commercial standards of the drawees or payors business."

Hence, we may have a case of first impression in construing the latter section of our statutory law.

Without repeating the various errors previously recited, it appears to this Court presumptuous on the part of Arena Auto Auction, Inc., Defendant-Appellant, to insist that they did nothing for which they should be held accountable. We point out the interval of lapsed time before they, in their fast-thinking, fast-operating business, decide first to stop payment.

238

Secondly, bearing in mind the erroneous sending of a second check to the same payee, and considering the custom of the trade as set forth by the testimony of the several gentlemen of the financial world as to the routine handling of checks in banking institutions, it is our considered conclusion that to require the recipient Bank to stop and question persons known to that Bank and presenting checks in routine business and issued by makers likewise known to the Bank, would be placing cogs in the wheels of business, which, in turn, would bring those wheels of the banking business to an astounding and abrupt halt. This, as we see it, was neither the intent nor the purpose of our legislators in passing the section in our Commercial Code to which reference was made.

We, therefore and accordingly, do conclude that the Trial Court was correct in holding that the Defendant-Appellant, by their own negligence, substantially assisted in making it possible that an unauthorized person's signature passed title to the funds represented by said check.

Judgment of the Trial Court is affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.