Anna C. **BAGBY**, Individually and as Guardian of Kenneth Bagby and Dixie Bagby, Minors, Plaintiffs,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.**, Defendant and Third-Party Plaintiff,

v.

**COMMERCE BANK OF KANSAS CITY**, Third-Party Defendant and Fourth-Party Plaintiff,

v.

**TRADERS NATIONAL BANK** and City National Bank and Trust Co., Fourth-Party Defendants.

No. 18397-4.

United States District Court, W. D. Missouri, W. D.

July 11, 1972.

Daniel M. Dibble, Kansas City, Mo., for plaintiff.

F. Philip Kirwan, and R. W. Mason, Jr., Margolin & Kirwan, Kansas City, Mo., for defendant.

John C. Thurlo, Swanson, Midgley, Jones, Eager & Gangwere, Don M. Jackson, Kansas City, Mo., for third-party defendant.

## MEMORANDUM AND ORDER GRANTING JUDGMENT IN FAVOR OF THIRD PARTY DEFENDANT AND AGAINST THIRD PARTY PLAINTIFF

ELMO B. HUNTER, District Judge.

■ This is a diversity action which was originally brought by plaintiff against Merrill Lynch, Pierce, Fenner & Smith, Inc., (Merrill Lynch) a stock brokerage firm, to recover damages for the conversion and sale of certain shares of common stock owned by plaintiff individually and as legal guardian of her minor children. Defendant brought a third party action against its drawee-bank, Commerce Bank of Kansas City (Commerce Bank) for the alleged wrongful conversion of funds on deposit with the drawee by the payment of certain checks over an unauthorized signature. Commerce Bank, in turn, filed a fourth party action against two collecting banks, Traders National Bank (Traders Bank) and City National Bank and Trust Company (City National Bank), claiming indemnification by reason of certain endorsement guarantees. Later, following settlement of plaintiff's original claim against defendant for the conversion of the shares of stock, plaintiff's complaint was dismissed with prejudice upon her motion. Thus, there remains for determination in this cause the third party action and the third party defendant's claim for indemnification should liability be found against it.[1] Additionally, third party defendant seeks reimbursement for certain attorney fees expended in the defense of this action.

The facts underlying this action basically have been agreed upon by the parties by their stipulation at the trial of this cause. Additionally, certain other evidence was adduced during the trial. Based upon the stipulation of the parties and the additional testimony and evidence adduced at trial, the Court finds the facts as follows.

During the month of August, 1966, following the death of her husband, a former employee of the Sears, Roebuck and Company, plaintiff contacted a Kansas City, Missouri, attorney, Marshall Lyons, for the primary purpose of obtaining an appointment of guardianship of her two minor children so that certain stock certificates could be issued to them. Plaintiff, along with her minor children, was the beneficiary of the Savings and Profit-Sharing Pension Fund of the Sears Company and they were thus entitled to receive the shares of stock then held by Sears.

On November 30, 1967, plaintiff appeared before the Probate Court of Ray County, Missouri with Lyons and ob-

---

1. The third party defendant and the fourth party defendants have moved to dismiss defendant's claim, urging that, because of the settlement and dismissal of the original claim, the third party action is not proper under Rule 14, F.R.Civ.P., in that it is "an entirely separate claim against a third party, even though it arises out of the same general set of facts as the main claim." Suggestions of the Fourth Party Defendants in Support of Motion to Dismiss, filed November 19, 1971. However, although defendant has asserted a theory of recovery which is independent of plaintiff's original theory, it is clear that defendant is basically attempting to pass on a part of its loss incurred by reason of its liability to plaintiff. Further the facts relied upon by defendant in pressing this claim are integrally involved in plaintiff's initial claim. The third

party action is, therefore, permissible under the provisions of Rule 14, F.R.Civ.P. See: 3 Moore, Federal Practice ¶ 14.07, p. 512 (1968 ed.). Thus, in order to serve the general purpose of Rule 14 by avoiding duplicitous litigation, the Court, in its discretion, should proceed to determination of the third and fourth party claims, particularly in view of the protracted, expensive, and comprehensive pretrial proceedings which have occurred in this cause. In proceeding with the third and fourth party actions following the dismissal of the original claim, it should be noted that federal jurisdiction independently exists as to the defendant's claim against the third party defendant in that there is both diversity of citizenship and the requisite amount in controversy. See: 3 Moore, Federal Practice ¶ 14.26, p. 708 (1968 ed.).

tained an order appointing her as guardian of the children. Shortly thereafter, on December 1, 1967, the Sears Company received a letter from Lyons which forwarded previously-requested certified copies of letters of guardianship issued by the Probate Court of Ray County, Missouri. Also enclosed was a letter dated November 30, 1967, signed by the plaintiff, which contained certain instructions as to the method of disbursements of the benefits of the Savings and Profit-Sharing Pension Fund.

On December 19, 1967, the Sears Company issued two certificates for shares of common stock in the name of plaintiff, totalling 154 shares; four certificates in the name of plaintiff as guardian of her son, totalling 397 shares; and four stock certificates in the name of plaintiff as guardian of her daughter, totalling 397 shares. The certificates were sent to plaintiff in care of Marshall Lyons at Kansas City, Missouri. Thereafter, Lyons opened two separate accounts with defendant, Merrill Lynch. On January 4, 1968, Lyons went to the Kansas City, Missouri offices of Merrill Lynch and contacted one William Johnson, an account executive with Merrill Lynch, who opened an account with defendant in the name of plaintiff. Later, on March 7, 1968, Lyons opened another account through Johnson in the name of plaintiff as guardian of the minor children. At the time these accounts were opened, Johnson did not personally meet plaintiff, talk to her on the telephone, or obtain a signature of plaintiff. Johnson has never met plaintiff.

On two separate occasions, the Probate Court of Ray County, Missouri, authorized the sale of certain portions of the stock issued to plaintiff as guardian of the minor children. On March 6, 1968, a duly executed petition was filed in the Probate Court to sell 100 shares of the Sears stock of the estate of the guardianship. An order was entered by the Probate Court on that date authorizing the sale of that stock at private sale for cash at market value. Again, on June 17, 1968, a petition was filed in the

guardianship estates for authorization to sell 97 shares of Sears stock for the approximate value of $6,656.00 to pay taxes, costs and other expenses of the estate. This petition was granted by an order of the Probate Court. There is no evidence that Merrill Lynch received copies of these probate court orders at any time mentioned herein.

After the accounts were opened with Merrill Lynch and on four different occasions between January 1, 1968 and June 19, 1968, certificates of Sears stock for plaintiff, both as an individual and as guardian of the minor children, were delivered to Merrill Lynch and sold through the accounts which had been opened by Lyons. In each instance, the certificates were endorsed with a facsimile signature of plaintiff and, with respect to the certificates issued to plaintiff as guardian of the minor children, the certificates contained additional typewritten language indicating that plaintiff's signature was endorsed in her capacity as guardian of the minor children, the form in which the certificates had been issued.

As payment in the sale of the stock certificates, Merrill Lynch drew a series of four checks against its checking account which was maintained at the third party defendant, Commerce Bank. The payee named on each of the checks was the plaintiff. Two of the checks were made to plaintiff's order as an individual, and two were drawn to plaintiff's order as guardian of the minor children.

The first of the checks, No. 0005638, was drawn by Merrill Lynch on January 8, 1968, against its account in the amount of $5,600.08, and was made payable to "Mrs. Anna C. Bagby, c/o Marshall W. Lyons." Thereafter, this check was presented by Lyons to Traders Bank. On the same day, the check was deposited to Lyons' personal business account. The check was endorsed as follows: "Anna C. Bagby, c/o Marshall W. Lyons, Marshall W. Lyons."

On February 14, 1968, Merrill Lynch drew the second check, No. 10603, on its

account at Commerce Bank in the sum of $3,130.00. The check was made payable to "Anna C. Bagby." Lyons presented this check to Traders Bank and it was deposited to his personal account on the same day. At the time the check was presented, it was endorsed, "Anna C. Bagby, M. W. Lyons."

On March 15, 1968, defendant Merrill Lynch drew the third check, No. 11463, payable to the order of "Anna C. Bagby, Gdn. Est., Kenneth R. and Dixie Bagby" in the amount of $35,193.20. On the same day, the check was presented to City National and was deposited to the personal account of Lyons. At the time it was deposited, the check was endorsed, "Anna C. Bagby, Est. Kenneth R. & Dixie L. Bagby M. W. Lyons."

On June 19, 1968, Merrill Lynch issued and drew the final check, No. 15006, made payable to the order of "Anna C. Bagby, Gdn. Est. Kenneth R. Bagby" in the amount of $6,644.19. The check was presented to City National Bank on June 19, 1968, and was deposited to the personal account of Lyons, although $250.00 of the amount was paid in cash to Lyons at the time the check was presented for deposit. At the time the check was deposited, it was endorsed, "Anna C. Bagby Gdn. Est. Kenneth R. Bagby M. W. Lyons."

After the initial presentment by Lyons, each of the above-mentioned checks were endorsed by the respective collecting banks, City National Bank and Traders Bank, as follows: "Pay any Bank, Banker or Trust Co., P.E.G.," and thereafter were presented to Commerce Bank. Upon presentment by the collecting banks, Commerce Bank paid the checks and charged the face amounts thereof against the account of Merrill Lynch.

With respect to each check, Commerce Bank made no effort to determine or verify the genuineness of the endorsements before paying the amount of the checks to the cashing banks, and did not know in fact whether the payee's endorsements were genuine or forged. In each instance, Commerce Bank relied solely upon the guarantee of prior endorsements given by each of the collecting banks and warranties of the Uniform Commercial Code which passed with the checks at the time of the presentment and transfer of the checks.

As to the checks cashed and collected by Traders Bank, no employee or officer of Traders was present when the endorsements of Anna C. Bagby were made on the checks. The payee was a stranger to Traders Bank and was not known by it. The tellers of Traders Bank, who accepted the checks for deposit, do not recall that Lyons was accompanied by plaintiff at the time the said checks were presented to Traders Bank for deposit.

With regard to the checks cashed and collected by City National Bank, no employee or officer knows whether Anna C. Bagby personally endorsed the two checks in the presence of any officer or employee of City National Bank, and they do not know who presented the checks. City National Bank did not determine or attempt to verify the authenticity or genuineness of the endorsements of the payee's signatures at the time the checks were presented for deposit and for partial payment of the proceeds to Lyons in cash.

Plaintiff, the payee of the checks, was not contacted by any officer, employee or agent of Commerce Bank, Traders Bank, or City National Bank regarding the genuineness of the endorsements on any of the checks. The banks did not attempt to verify whether the payee had endorsed the checks or whether she had given Lyons authority to endorse these checks or whether she had consented to their deposit to Lyons' personal account. Plaintiff did not endorse any of the checks in the presence of any employee or agent of Commerce Bank, Traders Bank, or City National Bank prior to, or at the time of their deposit and subsequent collection and payment. The plaintiff also was not known to Commerce Bank, either personally or by a

business relationship. Plaintiff had no account of any kind with or transacted any business with City National Bank or Traders Bank.

Plaintiff has denied that the endorsement of her signature on the checks is her genuine signature and she denies that she authorized anyone to endorse the checks with her signature. Further, she denies knowledge of the existence of the checks prior to their payment by Commerce Bank. She also denies that Lyons had any authority to have the checks drawn payable to her, that Lyons had any authority to accept delivery, and that he had any authority to endorse and cash the checks on her behalf. Plaintiff did not receive any of the proceeds of the checks.

As to the opening of the individual and guardianship accounts with it, Merrill Lynch dealt solely with Lyons. Furthermore, Merrill Lynch handled the sales of the stock of plaintiff and the minor children solely through Lyons. Merrill Lynch did not verify Lyons purported authority with plaintiff with respect to the opening of the accounts and the sale of the stock. Plaintiff's individual and guardianship accounts were opened by Merrill Lynch, and the sales of the stock were transacted through the accounts without the specific approval of Merrill Lynch's New Accounts Department in New York, New York, and the opening of the individual and guardianship accounts was not accepted or approved by a principal executive officer of Merrill Lynch or any other person. Orders were entered in plaintiff's individual account, trades were executed through that account, and proceeds of sales were disbursed by Merrill Lynch to Lyons in connection with that account without a power of attorney having been obtained from plaintiff.

None of the stock certificates sold through the individual and guardianship accounts by Lyons were endorsed in the presence of any employee of Merrill Lynch. Merrill Lynch did not verify whether plaintiff had authorized anyone to endorse any of the stock certificates with a stamped facsimile of her signature. And, there is nothing to show that plaintiff gave Lyons express authority, either oral or written, to endorse her signature on the certificates.

The drawing, issuance and delivery of each of the four checks, drawn by Merrill Lynch on its account at Commerce Bank, were made by Merrill Lynch without obtaining any written authorization from plaintiff for such drawing, issuance and delivery of the checks to Lyons, or without otherwise verifying with plaintiff, personally, that plaintiff had authorized such drawing, issuance and delivery of the checks to Lyons.

Merrill Lynch did not mail to plaintiff at her residence, or deliver to plaintiff personally, any confirmation or other notice of: the opening of the account in plaintiff's name as an individual; the opening of the guardianship account for plaintiff's minor children; the sale by Merrill Lynch of the stock which was owned by plaintiff individually or which was held by plaintiff as guardian of the estates of the minor children; or the disbursements of the proceeds of the sale of the stock sold for the plaintiff's individual account or the guardianship estate account for the two minor children. Rather, confirmation of these matters was mailed by Merrill Lynch to plaintiff in care of Lyons at his place of business.

On or about January 31, 1968, Merrill Lynch received statements of its account with Commerce Bank with which was enclosed cancelled check No. 0005638. On or about February 29, 1968, Merrill Lynch received statements of its account with Commerce Bank with which was enclosed cancelled check No. 10603. On or about March 29, 1968, Merrill Lynch received statements of its account with Commerce Bank with which was enclosed cancelled check No. 11463. On or about June 28, 1968, Merrill Lynch received statements of its account with Commerce Bank with which was enclosed cancelled check No. 15006.

Commerce Bank first received notice on October 8, 1968, that plaintiff's purported endorsement on check No. 0005638 and check No. 11463 were claimed to be unauthorized or forged, and prior to the service of the third party complaint in this cause, on July 23, 1970, Commerce Bank had not been notified by anyone that plaintiff's purported endorsements on checks No. 10603 and No. 15006 were claimed to be unauthorized or forged.

At the time Commerce Bank paid the four checks in question and charged Merrill Lynch's account with the amounts of those checks, Commerce Bank did not have actual knowledge that the purported endorsements of plaintiff were unauthorized or forged. And, Commerce Bank did not have possession of an admittedly genuine specimen of plaintiff's signature or handwriting.

Commerce Bank gave Traders Bank and City National Bank adequate and timely notice of plaintiff's claim that purported endorsements on the four checks were unauthorized or forged and of the claim of Merrill Lynch and its demands with respect thereto.

The events underlying this cause took place subsequent to the adoption in Missouri of the Uniform Commercial Code, Mo.Rev.Stat. §§ 400.1–101, et seq. Thus, since Missouri law is applicable in this cause, the Code generally governs the respective rights and liabilities of the parties with respect to the payments of the checks over an unauthorized or forged signature. See: Mo.L.1963, p. 637, § 10–101.

Based primarily upon the provisions of Mo.Rev.Stat. §§ 400.3–419(1)(c), (2), 400.3–404, and 400.4–401(1), and the pre-Code case precedent of Missouri, it is the contention of Merrill Lynch, as drawer of the checks, that its drawee-bank, Commerce Bank, is wholly liable to it for the face amounts of the checks which were paid over the unauthorized or forged endorsements of the payee. Conversely, Commerce Bank urges that

Merrill Lynch is precluded from any recovery by the provisions of Mo.Rev.Stat. § 400.3–406. In any event, Commerce Bank asserts that, should liability be found on its part with regard to the claim of Merrill Lynch, it is indemnified entirely by the collecting banks, City National Bank and Traders Bank, under Mo.Rev.Stat. §§ 400.4–207(1)(a), 400.-3–417(1)(a), and the express guarantees of all prior endorsements given by the collecting banks upon presentment. City National Bank and Traders Bank do not contest the right of Commerce Bank to indemnification, but also assert that the drawer of the checks is precluded from recovery by the provisions of Mo.Rev. Stat. § 400.3–406.

Under the provisions of Mo.Rev.Stat. § 400.3–419, "an instrument is converted when . . . it is paid on a forged indorsement." And, under subsection (2) of Section 400.3–419, the measure of damages as against a drawee is "the face amount of the instrument[s]." Thus, absent conduct on the part of the drawer which would preclude his recovery, the drawer is entitled to recovery against his drawee-bank where, as here, checks have been paid on unauthorized or forged endorsements. See: J. Mordy, Forged or Altered Instruments under the Uniform Commercial Code, 24 Mo.B.J. 424, 430–431 (Oct.1968). As to pre-Code Missouri law, see: Commercial Credit Corp. v. Empire Trust Co., 260 F.2d 132, 134 (8th Cir. 1958); Borserine v. Maryland Casualty Co., 112 F. 2d 409 (8th Cir. 1940; American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034 (1932); Scott v. First National Bank, 343 Mo. 77, 119 S. W.2d 929 (1938); Rettinghouse v. Krey Packing Co., 200 S.W.2d 584 (Mo.Ct. App.1947). The liabilities of the third and fourth party defendants turn, therefore, upon a determination as to whether Merrill Lynch is foreclosed from recovery by its own actions prior to the payment of the checks to Lyons over the forged endorsements of the plaintiff, payee of the checks.

The provisions of Mo.Rev.Stat. § 400–3.406 read as follows:

"Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority . . . against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

Therefore, the claim of Merrill Lynch against its drawee bank will fail if (1) its actions in drawing the checks and placing them in the hands of the forger, Lyons, were negligent, (2) that negligence "substantially contribute[d] . . . to the making of [an] unauthorized signature[s]," and (3) the checks were paid "in good faith and in accordance with the reasonable commercial standards of the [banks'] business."

At the time Merrill Lynch, a member of the New York Stock Exchange, opened its accounts in the name of plaintiff, individually and as guardian of the minor children, and at the time it negotiated the stock transactions with Lyons, placing the payment checks in the hands of Lyons, Rules 401, 405, and 409 of the New York Stock Exchange were in full force and effect. Those rules read, in pertinent part, as follows:

"Rule 401—Every member, allied member and member organization shall at all times adhere to the principles of good business practice in the conduct of his or its business affairs.

"Rule 405—Every member organization is required through a general partner, a principal executive . . . to (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization . . . (3) . . . the member, general partner, office or designated person approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer * * * (10) When an agency account is carried by a member organization its files should contain the name of the principal for whom the agent is acting and written evidence of the agent's authority."

As previously indicated, during the entire course of stock transactions and the ultimate payment to Lyons by check for the sale of stock, Merrill Lynch never met plaintiff personally, nor confirmed in any way Lyons' authority to open the stock accounts, to sell the shares of stock, or to receive payment for the sale of the stock. Not even a cursory investigation was made concerning plaintiff, as Merrill Lynch's newly-acquired customer, or Lyons, purportedly acting in her behalf. Any information received by Merrill Lynch concerning the plaintiff or the validity of Lyons' authority was received from the purported agent, Lyons. No request was made to meet with plaintiff; no attempt was made to confirm the transactions with plaintiff either orally or by written communication; no written customer's agreement signed by plaintiff was requested or obtained; no court order was requested or obtained with regard to the sale of the guardianship stock; and no power of attorney for Lyons was requested or received from plaintiff. In summary, even though the Exchange Rules directed otherwise, and although a minors' guardianship estate was involved, Merrill Lynch totally neglected and failed to confirm the authority of Lyons to deal with the stock or to receive payment, relying instead entirely upon Lyons' representations. In this regard, it is also noteworthy that the stock transactions between Merrill Lynch and Lyons occurred over a six-month period, a sufficient time period in which to investigate and confirm Lyons' authority to act for plaintiff individually and as guardian of the minor children. Furthermore, in violation of its own Opera-

tions Manual and certain other rules of the New York Stock Exchange, Merrill Lynch did not mail communications concerning the stock transactions to plaintiff,[2] obtain approval for the opening of the new accounts,[3] obtain a court order for the opening of the guardianship account,[4] or receive a power of attorney from Lyons.[5]

▪▪ In determining whether Merrill Lynch's conduct in its stock transactions with Lyons constituted "negligence," as that term is used in Section 400.3–406, its own regulations and procedures and the Rules of the New York Stock Exchange, while not conclusive, are highly relevant and should be given considerable weight in ascertaining the standard of care applicable. Fidelity & Deposit Company v. Chemical Bank New York Trust Co., 65 Misc.2d 619, 318 N. Y.S.2d 957 (1970); Hartford Accident and Indemnity Co. v. Walston & Co., 21 N.Y.2d 219, 287 N.Y.S.2d 58, 234 N.E.2d 230 (1967); Ward v. City National Bank & Trust Co. of Kansas City, 379 S.W.2d 614 (Mo.1964); Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S.W. 777 (1926); Foster v. Kansas City Rys. Co., 235 S.W. 1070 (Mo.1921). See also: W. Prosser, Torts § 33, pp. 168–171 (1964 ed.). And, in

light of the standard of care, as shown by all the evidence adduced in this proceeding, including the regulations and procedures adopted by Merrill Lynch itself and the Rules of the New York Stock Exchange, the Court finds that Merrill Lynch was, in fact and in law, negligent in its transactions with Lyons as described previously herein.

The question remains, however, whether the negligence of Merrill Lynch in dealing with Lyons "substantially contributed" to the making of the unauthorized signatures by Lyons. In this respect, Merrill Lynch urges that, before its negligence becomes a bar to recovery, it must be found that such negligence "directly and proximately caused" the payment of the checks over the unauthorized signatures. In support of this contention, Merrill Lynch cites several pre-Code decisions in Missouri indicating that "negligence of the maker is immaterial unless it is of a kind that directly and proximately affects the conduct of the banker in the performance of his duties." American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034, 1038–1039 (1932); Scott v. First National Bank in St. Louis, 343 Mo. 77, 119 S.W. 929 (1938). Conversely, it is the contention of the

2. Rule 409 of the New York Stock Exchange reads, in part:
"(b) No member organization shall address confirmations, statements or other communications to a non member customer (1) in care of a person holding power of attorney over the customer's account unless either (A) the customer has instructed the member organization in writing to send such confirmations, statements or other communications in care of such person, or (B) duplicate copies are sent to the customer at some other address designated in writing by him."
Merrill Lynch Operations Manual—*Mail to Agent or Attorney*
"Agents or attorneys may receive copies of notices, statements or correspondence relevant to the account from which they act, but at all times, notices, statements and all correspondence relevant thereto must go to the customer, or owner of the account, at his place of business and residence or at some other address designated in writing by such customer."

3. Merrill Lynch Operations Manual—*Trust and Guardian Accounts—Restrictions*
"[A]pproval shall be obtained from the new accounts department in New York before any transactions are made in the newly opened trust or guardian account."

4. Merrill Lynch Operations Manual—*Trust and Guardian Accounts*, indicating that "A certified copy of the Court Order appointing [a] guardian" must be obtained in connection with a guardianship account.

5. Merrill Lynch Operations Manual—*Accounts handled under a power of attorney*
"Before orders may be entered in an account by any person other than the owner, a 'power of attorney—general' . . . must be obtained executed by the customer, without change or alteration."

third and fourth party defendants that the Uniform Commercial Code has materially altered the test of causation in Missouri.

■ Subsequent to the adoption of the Code in Missouri, there have been no Missouri decisions to indicate whether or not the language of Section 400.3–406 has changed the "proximate cause" test of causation previously applied in Missouri to determine if the negligence of a drawer precluded his recovery for the payment of a check over an unauthorized signature. Thus, in ascertaining the proper test of causation, it is necessary to look to the Code itself and to decisions which have been rendered in other jurisdictions interpreting Section 3–406 of the Code. The language of the Code is, of course, determinative in cases arising after its adoption. At the outset, it should be noted, therefore, that Section 400.3–406 is not framed in terms of "proximate cause," but rather specifies that the drawer "is precluded from asserting the . . . lack of authority . . . against a drawee or other payor" where the negligence of the drawer "substantially contributes . . . to the making of [the] unauthorized signature." [6] And, although there is some authority to the contrary,[7] the more literal and better reasoned case authority indicates that Section 3–406 of the Code has materially changed the test of causation. See: Fidelity & Deposit Company of Maryland v. Chemical Bank New York Trust, 65 Misc.2d 619, 318 N.Y.S.2d 957 (1970); Thompson Maple Products, Inc. v. Citizens National Bank of Corry, 211 Pa.Super. 42, 234 A.2d 32 (1967). As stated in Fidelity & Deposit Company of Maryland v. Chemical Bank New York Trust, *supra* at 959, a case involving facts similar to those herein:

"[T]his section [§ 3–406] . . . shortened the chain of causation and modified the doctrine by specifying negligence which substantially contributes to the making of an unauthorized signature." See also: Thompson Maple Products Inc. v. Citizens National Bank of Corry, *supra*, indicating that the Code "has abandoned the language of the older cases."

Thus, under the Code, the drawer's negligence precludes his recovery not only where it "proximately and directly" affects the drawee in payment of the checks, but also where it "substantially contributes" to the making of the unauthorized signatures.

---

6. In Fargo National Bank v. Massey-Ferguson, Inc., 400 F.2d 223 (8th Cir. 1968), the Court of Appeals for the Eighth Circuit applied the pre-Code law of estoppel of North Dakota to a factual situation which preceded enactment of the Code in that state. However, in that case the Court of Appeals recognized that a "substantial contribution" test had subsequently been adopted by enactment of Section 3–406 (N.D.Cent.Code § 41–03–43 (1959)). *Id.* at 227, n. 2. Further, the cases indicate that the substantial contribution test under the Code includes negligent conduct on the part of the drawer which previously was too remote in the chain of causation to preclude recovery. *Compare* New Amsterdam Casualty Co. v. Albia State Bank, 214 Iowa 541, 239 N.W. 4, 242 N.W. 538 and American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W. 1034 (1932) *with* U.C.C. § 3–406, Comment No. 7 and Park State Bank v. Arena Auto Auction, Inc., 59 Ill.App.2d 235, 207 N.E.2d 158 (1965).

7. See: Gast v. American Casualty Co. of Reading, Pa., 99 N.J.Super. 538, 240 A.2d 682, 685–686 (1968), indicating that the words "substantially contributes" is a "substitute for 'proximate cause,'" and is the same as the "substantial factor" test found in tort law. Prosser indicates that the substantial factor test, as described in *Gast*, is broader than the older "but for" formula used to determine causation. W. Prosser, Torts §§ 41 & 49 (1964 ed.). In any event, the "substantial factor" test is broad enough to include defendant's conduct in the transactions involved herein. See: Gresham State Bank v. O & K Construction Co., 231 Or. 106, 370 P.2d 726, 372 P.2d 187 (1962), finding negligence under Section 3–406 on the part of the drawer, but determining that the drawee did not follow reasonable commercial standards.

In this cause, the negligence of Merrill Lynch did "substantially contribute" to the forgery of plaintiff's signature and the payment of the checks over that unauthorized signature. As previously indicated, by failing to ascertain or verify the scope of Lyons' authority and by placing the checks in Lyons' hands on four separate occasions in violation of its own regulations and the Rules of the New York Stock Exchange and principles of sound and prudent business practices, Merrill Lynch enabled Lyons to forge plaintiff's signature upon the checks and to present them for payment on each occasion. At any time during their dealings, appropriate action on the part of Merrill Lynch would have avoided the loss. Had Merrill Lynch verified Lyons' authority or confirmed the sales of stock with plaintiff at any time within the six-month period, as it reasonably should have done, particularly with guardianship estates involved, the forgeries would have been discovered. Thus, it is clearly apparent, therefore, that the negligence of Merrill Lynch, as drawer of the checks, "substantially contributed to the making of [the] unauthorized signature[s]." Further, the evidence at trial shows that the drawee paid the checks "in good faith and in accordance with reasonable commercial standards." Thus, under Section 400.3–406, Merrill Lynch is precluded from recovery as against its drawee-bank, Commerce Bank.

Accordingly, for the reasons stated above, judgment is hereby granted in favor of third party defendant, Commerce Bank of Kansas City, and against third party plaintiff, Merrill Lynch, Pierce, Fenner & Smith, Inc.[8] Costs are to be borne by third party plaintiff.

It is so ordered.

---

8. Third party defendant's claim for attorney fees against the fourth party defendants will be resolved by separate order in this cause.