Anna C. BAGBY, Individually and as Guardian of Kenneth Bagby and Dixie Bagby, Minors, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellant,

v.

COMMERCE BANK OF KANSAS CITY, Appellee,

v.

TRADERS NATIONAL BANK and City National Bank and Trust Co., Fourth-Party Defendants.

Anna C. BAGBY, Individually and as Guardian of Kenneth Bagby and Dixie Bagby, Minors, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant,

v.

COMMERCE BANK OF KANSAS CITY, Appellee,

v.

TRADERS NATIONAL BANK and City National Bank & Trust Company, Appellants.

Nos. 72–1511, 73–1191.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1973.

Decided Jan. 15, 1974.

Rehearing and Rehearings En Banc Denied Feb. 6, 1974.

**194**

F. Philip Kirwan, Kansas City, Mo., for Merrill Lynch.

John C. Thurlo and Richard K. Andrews, Kansas City, Mo., for Commerce Bank.

Robert K. Ball, II, Kansas City, Mo., for Traders National Bank.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal involves an interpretation of § 3–406 of the Uniform Commercial Code, as adopted in Missouri, which specifies that negligence which "*substantially contributes* to * * * the making of an unauthorized signature * * *" will preclude the drawer from asserting a forgery.

The appeal is a consolidation of two diversity actions originally brought in the United States District Court for the Western District of Missouri. Initially, plaintiff Anna C. Bagby sought damages from defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) for the conversion and sale of certain shares of common stock. Merrill Lynch in turn brought a third-party action against its drawee-bank, Commerce Bank of Kansas City (Commerce Bank), for conversion of funds by paying certain checks over unauthorized or forged indorsements. Commerce Bank then brought a fourth-party action against two collecting banks, Traders National Bank (Traders Bank) and City National Bank (City Bank) seeking indemnification based upon indorsement guarantees. Mrs. Bagby's original claim against Merrill Lynch was subsequently settled, and her complaint was dismissed upon her motion. The remaining claims of Merrill Lynch were tried to the court sitting without a jury, and resulted in a judgment in favor of Commerce Bank. The district court's memorandum and order, filed July 11, 1972, is reported at 348 F.Supp. 969 (W.D.Mo.1972). The facts are fully set forth in Judge Hunter's excellent opinion and will be reported only to the extent necessary for disposition of the issues presented.

Later, the fourth-party complaint was tried to the court with judgment being rendered in favor of Commerce Bank against Traders Bank and City Bank for attorney fees and litigation expenses incurred by Commerce in defending the claim against Merrill Lynch. This opinion was not published.

Both the third and fourth party actions presented questions of first impression in Missouri. Although under such circumstances we give "great weight" to the determination of local law by a district court, we are not bound by that determination. Luke v. American Family Mutual Insurance Company, 476 F.2d 1015, 1019 & n. 6 (CA 8, 1972), aff'd, en banc, 475 F.2d 1023.

**I. Merrill Lynch v. Commerce Bank** [1]

Following the death of her husband, Mrs. Bagby contacted attorney Marshall

---

I. As noted by the district court, the respective rights of the parties hereto are governed by the Uniform Commercial Code, Vernon's Ann.Mo.Stat. § 400.1–101 et seq.

Lyons for the primary purpose of obtaining an appointment of guardianship for her two minor children so that certain shares of Sears, Roebuck stock could be issued to them. She and her children were beneficiaries of the Savings and Profitsharing Pension Fund of the Sears Company. She was so appointed.

In December of 1967, several shares of Sears stock were issued to Mrs. Bagby, both as an individual and in her capacity as guardian. They were sent to her in care of attorney Lyons. Lyons thereafter contacted a Merrill Lynch account executive through whom an account was opened in the name of Mrs. Bagby individually and another opened in her name as guardian. No Merrill Lynch representative ever met Mrs. Bagby personally, nor confirmed Lyons' authority to open the accounts. No contact whatsoever was made with Mrs. Bagby. All information received by Merrill Lynch was obtained through Lyons. Merrill Lynch dealt solely with Lyons and it did not at any time give Mrs. Bagby personal confirmation that the accounts had been opened.

On two occasions in 1968, the Probate Court of Ray County, Missouri authorized the sale of Sears stock in the guardian estate. There is no evidence that Merrill Lynch ever received copies of these orders. On four occasions between January 1, 1968 and June 19, 1968, Sears stock certificates in Mrs. Bagby's name both as an individual and as guardian of the minor children were indorsed with a facsimile signature of Mrs. Bagby and delivered to Merrill Lynch, who, in turn, sold the stock through the accounts opened by Lyons. Merrill Lynch did not verify whether Mrs. Bagby had authorized anyone to in-

dorse any of the stock certificates with a stamped facsimile signature. As payment, Merrill Lynch drew four checks against its checking account which it maintained with Commerce Bank. The initial check was made payable to "Mrs. Anna C. Bagby, c/o Marshall W. Lyons," and was indorsed "Anna C. Bagby, c/o Marshall W. Lyons, Marshall W. Lyons." The second check was made payable to "Anna C. Bagby" and indorsed "Anna C. Bagby, M. W. Lyons." Both checks were deposited by Lyons in his personal account at Traders Bank. The third check was made payable to "Anna C. Bagby, Gdn. Est., Kenneth R. and Dixie Bagby" and indorsed "Anna C. Bagby, Est. Kenneth R. and Dixie Bagby M. W. Lyons." The final check was made payable to "Anna C. Bagby, Gdn. Est. of Kenneth R. Bagby" and indorsed "Anna C. Bagby Gdn. Est. Kenneth R. Bagby M. W. Lyons." These latter two checks were deposited by Lyons in his personal account at City Bank, with the exception of $250.00 of the amount of the fourth check which was paid in cash to Lyons. Merrill Lynch never obtained authorization from Mrs. Bagby for the drawing and issuance of the checks to Lyons.

In reliance upon guarantees of prior indorsements, Commerce Bank paid the checks upon presentment by the collecting banks and charged the respective indicated sums against Merrill Lynch's account.[2] At the time it paid on the checks, Commerce Bank had no actual knowledge that the indorsements were forged or unauthorized.

Mrs. Bagby denied the genuineness of the indorsements as her signature and denied that she authorized anyone to indorse the checks with her signature. She further denied that Lyons had any au-

---

(1959), adopted in Missouri prior to the events giving rise to this cause. *See*, 348 F.Supp. 969, 975.

2. Neither Traders Bank nor City Bank made any effort to ascertain the genuineness of and authorization for the indorsements by Lyons. *See*, V.A.M.S. § 400.4-207(2)(b) (1959). As noted by the district court, 348

F.Supp. 969, 973, Traders Bank's personnel did not know Anna Bagby and did not remember whether she accompanied Lyons when he deposited the checks. Similarly, City Bank's personnel did not know whether Anna Bagby indorsed the checks in the presence of any bank officer, nor did they know who presented the checks.

thority to have the checks drawn or to receive them. She never received any proceeds from the checks, and denied knowing of their existence prior to their payment by Commerce Bank.

Merrill Lynch, after settling with Mrs. Bagby, pressed its third-party complaint against Commerce Bank for paying the Bagby checks over the forged indorsements. The district court, however, held that Merrill Lynch was foreclosed from recovering against Commerce Bank under V.A.M.S. § 400.3–406 (1959), (§ 3–406). It held that Merrill Lynch by its own actions (1) in failing to ascertain Lyons' authority and (2) in placing the checks in Lyons' hands on four separate occasions in violation of its own regulations, and the Rules of the New York Stock Exchange[3] and sound business practices, was guilty of negligence which "substantially contributed" to the payment of the checks over unauthorized signatures.

■ In so holding, the district court determined that the adoption by Missouri of § 3–406 "materially altered the test of causation" previously applied in Missouri under the Uniform Negotiable Instruments Act. Under pre-code Missouri law only negligence which proximately related to a forgery or the detection thereof, and not merely to the issuance of the checks, would relieve a drawee-bank of liability for payment. American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034, 1038 (1932); accord, Scott v. First Nat. Bank in St. Louis, 343 Mo. 77, 119 S.W. 2d 929, 936–937 (1938).

■ It is our view that Missouri's adoption of § 3–406 did not materially change the test of causation necessary to preclude a drawer from recovery, and that in this respect pre-code Missouri law has not been modified.

§ 3–406 reads as follows:

Any person who by his negligence *substantially contributes* to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. (Emphasis supplied.)

Commerce Bank urges our acceptance of the district court's rationale that the use of the expression "substantially contributes" in § 3–406, rather than the wording "direct and proximate cause" (as was the *sine qua non* of pre-code law necessary to deny a drawer's recovery) creates a broader test which shortens the chain of causation. See, Thompson Maple Products v. Citizens National Bank, 211 Pa.Super. 42, 234 A.2d 32, 34 (1967); accord, National Bank & Trust Co. of Central Pa. v. Commonwealth, 9 Pa.Cmwlth. 358, 305 A.2d 769 (1973). We do not agree.

■ Although the official comment to § 3–406 expressly states that no attempt is made to define negligence,[4] we are persuaded that the intended use of "substantially contributes" necessarily requires some showing of a causal relationship equivalent to the "substantial factor" test generally applied in the law of negligence. Gast v. American Casualty Company of Reading, Pa., 99 N.J.Super. 538, 240 A.2d 682, 685 (1968); Gresham State Bank v. O. & K. Construction Co., 231 Or. 106, 370 P.2d 726, 372 P.2d 187 (1962); National Bank & Trust Co. of Central Pa. v. Commonwealth, *supra*, 9 Pa.Cmwlth. 358, 305 A.2d 769 (1973); 2 Anderson, Uniform Commercial Code, § 3–406:7 at 943 (1971); *but see*, Fidelity & Deposit Co. of Md. v. Chemical Bank of N.Y.T. Co., 65 Misc.2d 619, 318 N.Y.S.2d 957, 959 (1970); Thompson Maple Products, Inc. v. Citizens National Bank, *supra*, 211 Pa.Super. 42, 234 A.2d 32, 34–35 (1967). In 6 Willier & Hart, U. C.C. Reporter Digest, § 3–406 A3 at 2964 (1973) the authors reject the

---

3. *See*, 348 F.Supp. 969, 976–977.

4. § 3–406, Comments 3 & 7.

"shortened chain of causation" test of *Thompson Maple Products, supra,*[5] in favor of the narrow doctrine of pre-code estoppel:

> While no attempt is made in Section 3–406 to specify what is negligence, the court's holding that the plaintiff's conduct of its business over the course of years fitted the 'substantially contributed' negligence test of that section appears to be beyond the boundaries implied by the Official Comment to Section 3–406. It is submitted the draftees of the Code intended to continue the narrow doctrine of pre-code estoppel rather than to broaden the scope of contributory negligence beyond the passing of the forgery as the court did in the instant case.

*Compare,* Salsman v. National Community Bank of Rutherford, 102 N.J.Super. 482, 246 A.2d 162, 166 (1968).

■ The district court notes, however, that "[i]n any event, the 'substantial factor' test is broad enough to include [Merrill Lynch]'s conduct in the transactions involved herein." 348 F. Supp. 969, 978 n. 7. We disagree. It is our view that the situation created by Merrill Lynch's issuance of the checks was not enough to constitute a "substantial factor" in bringing about the forgery. *See,* Restatement of Torts 2d §§ 431 and 433 & Comment e (1965).[6]

The district court found, and Merrill Lynch admits, that it was negligent in handling the stock transactions and in bringing about the existence and the mistaken issuance of the checks. But such negligence related only to their issuance—not to the forgery itself.

Despite its wrongful sale of the certificates and its failure to conduct of customer investigation pursuant to Rule 405 of the New York Stock Exchange,[7] for which it admitted liability, Merrill Lynch correctly made the checks payable to the true owner, Mrs. Bagby, individually and as guardian of the minor children. Its action in mailing the checks to her attorney was consistent with standard business practices.

■ In the final analysis, we are convinced that the meaning of § 3–406 is best reflected by precluding a drawer from recovery under these or similar circumstances only where his negligent conduct contributes to the *forgery,* not merely to the unwarranted issuance of the checks, such as in the situation before us. To this extent it is our view that the pre-code holdings of *American Sash* and *Scott* remain viable law in Missouri.

The decision of the district court is reversed and judgment is accordingly entered in favor of Merrill Lynch on its third-party claim.

---

5. *Thompson Maple Products, Inc., supra,* held that several standard business practices of the drawer company viewed in their entirety were sufficient to support a finding that the company "substantially contributed" to the making of unauthorized signatures.

6. *American Sash, supra,* 56 S.W.2d 1034, 1038–1039 (1932), framed negligence necessary to assert the defense in terms of "direct" and "proximate" cause, which is essentially the equivalent of "legal cause" utilized by the Restatement. *See,* Restatement of Torts 2d, § 431, *supra,* and Scope Note at 425–26 (1965); *see also,* Ricketts v. Kansas City Stock Yards Co. of Maine, 484 S.W.2d 216, 221–222 (Mo.1972) (per Hyde, Sp. C., three JJ. concurring, two JJ. concurring in the result, and two JJ. dissenting). *Compare, American Sash, supra,* with Society Nat. Bank of Cleveland v. Capital Nat.

Bank, 30 Ohio App.2d 1, 281 N.E.2d 563, 566 (1972), in which the court stated: "mere laxity [by the drawer in the conduct of his business affairs] is not sufficient to prevent him from recovering against the drawee bank for the amount charged against his account and paid by the drawee over a forged indorsement, unless the lax conduct was the *proximate cause* of the loss." (Emphasis supplied.) We note by the court's citation to pre-code law that the adoption of the Code by that jurisdiction has not modified prior law. *Accord,* 2 Anderson, Uniform Commercial Code § 3–406:9.1 (1972–73 supp.).

7. *See generally,* Comment, The "Know Your Customer" Rule of the NYSE: Liability of Broker—Dealers Under the UCC and Federal Securities Law, 1973 Duke L. J. 489.

## II. Commerce Bank v. Traders & City Banks

▮ In an unreported memorandum and order, the district court awarded Commerce Bank the sum of $14,512.75, as reasonable attorney fees and litigation expenses incurred by it in defending the third-party claim of Merrill Lynch, the award to be paid by Traders and City Banks. It found that Traders and City Banks breached their express and implied warranties of indorsement given to Commerce Bank under V.A.M.S. § 400.4-207 (§ 4-207).[8] It further found that timely demand for defense was made by Commerce Bank and held that "this does appear to be an 'appropriate case' for an award of attorneys' fees and litigation expenses."[9]

Commerce Bank gave both Traders and City Banks adequate and timely notice of its demand that they assume the defense of this action and hold Commerce Bank harmless from any claims asserted against it by Mrs. Bagby or by Merrill Lynch. Commerce Bank further notified Traders and City Banks that if it were required to defend the third-party action, it would look to Traders and City Banks for complete reimbursement for any loss and expenses incurred.

Traders and City Banks did not directly respond. Commerce Bank then filed its answer to the third-party complaint. Thereafter, the Insurance Company of North America (INA) on behalf of its insureds, Traders and City Banks, responded to Commerce's demand. It declined to assume Commerce's defense for the stated reason that there was a serious question as to liability on the part of any of the banks. INA, however, on behalf of Traders and City Banks, agreed to indemnify Commerce Bank for any loss "in accordance with the Uniform Commercial Code" if Merrill Lunch were to prevail in its third-party action against Commerce Bank. INA also offered Commerce Bank a defense of the third-party action under the terms of the bond which Commerce Bank purchased from INA, provided formal notification and demand were made under the terms of that bond. The bond had a $25,000 deductible provision.

Commerce Bank made no demand for indemnity or defense under the terms of its bond with INA, but instead undertook the defense of the third-party action. Commerce then filed its fourth-party complaint against Traders and City Banks demanding indemnity for any

---

**8.** Under § 4-207, the burden rests upon the first bank in the collection chain to assure that indorsements are valid. The rationale is that the first collecting bank is in the best position to insure that it is taking the instrument from one with good title. *See*, Federal Deposit Ins. Corp. v. Marine Nat. Bank of Jacksonville, 303 F.Supp. 401, 403 (D.C.Fla.1969).

**9.** Under § 4-207(3), "damages for breach of such warranties * * * shall not exceed the consideration received by the customer or collecting bank responsible plus * * * expenses related to the items, if any." Comment 5 to § 4-207 states in part that "[t]he expenses referred to in this phrase may be ordinary collecting expenses and *in appropriate cases could also include such expenses as attorney fees.*" (Emphasis supplied.)

In the absence of a statute or contract providing for their allowance, attorney fees are not recoverable by the prevailing party. City of Grandview, Missouri v. Hudson, 377 F.2d 694, 696 (CA 8 1967). However, an exception to the general rule is that attorneys' fees which have been reasonably incurred in the defense of a claim indemnified against may be recovered where the right to indemnity either arises under a contract or is implied by law, provided that the indemnitor has notice of the lawsuit and an opportunity to defend. General Electric Company v. Mason & Dixon Lines, Inc., 186 F.Supp. 761, 766 (W.D.Va.1960); McDonough Construction Co. v. H. B. Fowler & Co., 281 F. Supp. 90, 95-96 (E.D.La.1968); 5 Corbin, Contracts § 1037 (1964). Such fees are limited, however, to those incurred in the defense of the claim indemnified against, and there should be no recovery for fees and expenses incurred in establishing the right to indemnity. General Electric Company v. Mason & Dixon Lines, Inc., *supra*; *accord*, McDonough Construction Co. v. H. B. Fowler & Co., *supra*. Missouri decisions are in accord. *See, e. g.*'s, State of Missouri: ex rel. Algiere v. Russell, 359 Mo. 80, 223 S. W.2d 481, 483 (Mo.1949); Hunter v. De-Luxe Drive-In Theaters, 257 S.W.2d 255, 260-261 (Mo.App.1953).

amounts it might be held liable to Merrill Lynch, plus attorneys' fees and litigation expenses.

Traders and City Banks now contend that the district court was wholly without power to make the award to Commerce Bank since no warranty had been breached under § 4–207.[10] They erroneously reason that a successful defense of the third-party claim by Commerce Bank based upon V.A.M.S. § 3–406, *supra*, necessarily carried with it the result that Commerce Bank acquired "good title" to the checks, and that no warranty of "good title" could therefore have been breached by Traders and City Banks under § 4–207.

■■ Despite our disposition of the third-party claim, suffice it to say that a finding of negligence necessary to preclude a drawer from recovery under § 3–406 does not *a priorori* mean that a drawee has obtained "good title" to the instrument(s) through the collection process, and that no "good title" warranty given by the collecting banks has been breached. Application of § 3–406 does not extinguish the drawer's rights against the drawee, but instead serves only to bar his 'remedy. Furthermore, although the Uniform Commercial Code does not define "good title," the draftsmen have made it clear that a good title warranty is a warranty of "the genuineness of indorsements," § 4–207, Comment 1 and § 3–417, Comment 3,[11] which in this instance were unauthorized.

■ Traders and City Banks also assert that the initial demand made upon them to defend all claims necessarily included claims for punitive damages since Merrill Lynch's original complaint sought punitive damages against Commerce Bank. It is their position that such demands were in excess of statutory limits under § 4–207, and that they were therefore justified in refusing such defense. As the district court noted, there was no allegation in the original third-party complaint that the acts of Commerce Bank were malicious or wilful or in any way such that a claim for punitive damages could be supported. An improper charge was made against Merrill Lynch's account under V.A.M.S. § 400.4–401(1), for which Merrill Lynch had the right to insist upon a recrediting subject to the defense of § 3–406. The inclusion of a frivolous claim of punitive damages does not justify the refusal by Traders and City Banks to assume the defense of Commerce Bank in the third-party action. Moreover, approximately seven months prior to trial of the third-party claim, the third and fourth-party complaints were amended reducing the amount of damages to the face value of the checks.[12] Traders and City Banks still refused to defend the third-party action and denied liability for attorneys' fees and expenses thereby incurred.

■ Additionally, Traders and City Banks contend that this is not an "ap-

---

10. Contrary to Traders and City Banks' interpretation of § 4–207(3), and Comment 5 thereof, the section does not require recovery by the drawee-bank of the consideration received by the collecting bank(s) as a prerequisite to recovery of attorneys' fees and litigation expenses.

11. *See*, D. Whaley, Forged Indorsements and the U.C.C.'s "Holder", 6 Ind.L.Rev. 45, 59–60 (1972).

12. Traders and City Banks argue that the district court erroneously decided that the provisions of V.A.M.S. § 400.3–419(2) compelled the abandonment of Merrill Lynch's claim for punitive damages. Although the

authorities disagree as to whether a drawer may pursue the drawee upon a theory of conversion under § 3–419, *see*, 2 Anderson, Uniform Commercial Code, § 3–419:11 at 1037 (1971); *see also*, Stone & Webster Engineering Corp. v. First National Bank & Trust Co., 345 Mass. 1, 184 N.E.2d 358 (1962); *but see*, Prudential Ins. Co. of America v. Marine National Exch. Bank, 315 F.Supp. 520, 522 (E.D.Wis.1970), Merrill Lynch's right under § 4–401(1) was nevertheless limited to restitution of the face amounts of the checks, and an inclusion of such a claim for punitive damages in any event was frivolous.

propriate case" for the award of such fees and expenses under § 4–207 because Traders and City Banks offered Commerce Bank indemnity "in accordance with the Uniform Commercial Code"[13] and because a defense was available under the terms of Commerce Bank's bond with INA. Neither of these contentions precludes Commerce Bank from recovering its collateral litigation expenses. Under either argument, the practical effect was to require Commerce Bank to defend the third-party claim itself. INA, which bonded all parties to the fourth-party action, agreed to indemnify Commerce Bank on behalf of Traders and City Banks only if Commerce failed in the third-party action. This conditional offer falls well short of the mark where full indemnity was required under § 4–207. Moreover, under § 4–406(5), Commerce Bank would be entitled to indemnity only if no defense were waived by it in the third-party action. This left Commerce Bank with a Hobson's choice. If it had called upon INA to assume its defense in the third-party action under the terms of its own bond with INA, Commerce Bank would have run the risk of INA failing in the defense, thereby precluding indemnification in the fourth-party action. Commerce Bank's recovery would then be diminished by the $25,000 deductible feature of its bond.

We deem other contentions made by appellant to be without merit and not worthy of comment.

The decision of the district court in awarding attorneys' fees and litigation expenses to Commerce Bank on its fourth-party claim is hereby affirmed.

Reversed in part; affirmed in part.

---

13. The basis of this argument is I.N.A.'s letter of September 16, 1970, written to Commerce Bank on behalf of Traders and City Banks, which reads in part:

    \*      \*      \*      \*      \*

"INA does recognize the liability of Traders Bank and City National if Merrill Lynch should prevail in their action against Commerce Bank. In such an event, and in behalf of Traders National Bank and City National Bank and Trust Company, INA does agree to indemnify Commerce Bank of Kansas City for any loss in accordance with the Uniform Commercial Code."