427 F.Supp. 677 (1977)
FRITO-LAY, INC., Plaintiff,
v.
SO GOOD POTATO CHIP COMPANY, Defendant.
No. 74-90 C (4).
United States District Court, E. D. Missouri, E. D.
February 3, 1977.
Jim J. Shoemake, Guilfoil, Symington & Petzall, St. Louis, Mo., for plaintiff.
Richard J. Sheehan, Susman, Stern, Agatstein, Heifetz & Gallop, Clayton, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court following a remand by the United States Court of Appeals for the Eighth Circuit on August 13, 1976 for a determination of appropriate legal and equitable relief. The United States Court of Appeals found that defendant "was in clear violation of its agreement with Frito-Lay . . ." which provided that defendant was not to market corn chips in a package "similar in color or design" to plaintiff's corn chip packaging.
In light of the mandate of the United States Court of Appeals, the Court makes *678 the following additional findings of fact and conclusions of law:

FINDINGS OF FACT
1) Defendant first began to use the packaging found to violate the agreement between the parties in July, 1973.
2) From April 1, 1973 through April 10, 1973, a strike against plaintiff kept all of plaintiff's products out of the market in a portion of the St. Louis area, thus giving a competitive advantage to defendant during that period.
3) Darrell Agee, then senior vice president of plaintiff corporation, was of the opinion that plaintiff had lost a total of $106,998.00 in sales as a result of defendant's changed packaging. Mr. Agee reached this total by relying on a market survey conducted by plaintiff. This survey showed that 11.6% of the persons interviewed thought they had purchased plaintiff's product when in fact they had purchased defendant's corn chips. Mr. Agee applied this 11.6% to the total sales of defendant's corn chip products during the period following defendant's introduction of the new packaging.
4) The Court has previously found that the marketing survey upon which Mr. Agee based this testimony was not reliable. The numbers involved in the survey were too few, and the stores at which the surveys were conducted were not chosen randomly. Accordingly, the Court finds that this formulation of damages is too unreliable to form the basis of an award.
5) Mr. Agee had also filed an affidavit with the Court in which he stated that
[i]n the four-month period beginning in mid-July immediately following So Good's reversion to the buff, red and white package, Frito-Lay's average four-week period corn chip sales for its St. Louis region was $78,847.00, reflecting a 6.3% loss compared with its average four-week period corn chip sales of $84,148.00 in the three-month period immediately preceding the reversion. Such a decline in corn chip sales was sharply in contrast to a 6.9% increase in sales from $7,601,000.00 to $8,126,000.00 nationally during the same period.
6) This formulation of damages omits variables which are relevant to the damages sustained. Mr. Agee testified that there were annual peaks and valleys in the sales of corn chip products. He identified the peak periods to be at holiday times and the start of the school year, with the valley periods falling in-between. Therefore, the 6.3% decrease in sales could reflect a valley period following the spring and summer holidays. Mr. Agee did not compare the St. Louis area sales during this period to the sales in the same area in the preceding year. In fact, his testimony was that the sales of plaintiff's corn chip products were increasing. There is no evidence from which to find that the St. Louis area sales are normally in line with the sales in the rest of the nation. Without such evidence, a comparison of the St. Louis area sales and national sales would be meaningless. Additionally, the decline in St. Louis area sales would have to take into account the April 1 to April 10, 1973 strike during which time none of plaintiff's products were offered for sale in the St. Louis area. Mr. Agee's own testimony was that the strike could have offered defendant a competitive advantage. The Court finds that the claimed 6.3% decline does not adequately take into account factors other than defendant's changed packaging, and therefore can not be a basis for recovery.

CONCLUSIONS OF LAW
The Court agrees with plaintiff's assertion that
. . . a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible. Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 352 [359], 379 [47 S.Ct. 400, 71 L.Ed. 684] (1927). *679 Nevertheless, "[t]he rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong but only uncertain in respect to their amount." Story Parchment Company v. Paterson Parchment Paper Company, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). It is the Court's conclusion that plaintiff has failed to establish that any decline in sales of its corn chip products was in fact the result of defendant's wrongful breach of the agreement. Accordingly, the Court will award plaintiff only nominal damages.
The Court further concludes from the facts found in the March 31, 1975 opinion of this Court that recovery of punitive damages would be inappropriate herein. Otto v. Imperial Casualty and Indemnity Co., 277 F.2d 889 (8th Cir. 1960). Similarly, the Court concludes that the evidence adduced would not justify an award of attorney's fees. Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 491 F.2d 192 (8th Cir. 1974).
Because defendant has breached its agreement not to market corn chips in a package similar in color or design to plaintiff's packaging, injunctive relief will issue.