FEDERAL INSURANCE COMPANY, Respondent, v DIAMOND KAM-VAKIS & Co., INC., Appellant.

First Department, January 12, 1989

### APPEARANCES OF COUNSEL

*Michael Maillet* of counsel *(Hendler, Murray & Miat, P. C.,* attorneys), for respondent.

*Marvin Usdin* for appellant.

### OPINION OF THE COURT

MILONAS, J.

The instant action for conversion and nonpayment of goods was commenced by plaintiff Federal Insurance Company, as assignee of American Brands, Inc. The merchandise in question consisted of staple machines and parts manufactured by Ace Fastener Company, a wholly owned subsidiary of American Brands, Inc., whose national headquarters are situated in Chicago, Illinois. Ace Fastener Company distributes its products through sales representatives assigned to various geographic locations within the United States. In that regard, Paul Slepp was formerly the salesman for the New York area and among his responsibilities were to take orders, confirm pricing and arrange for credit when there was a problem with defective merchandise or late delivery.

At some point in 1982, defendant Diamond Kamvakis & Co., Inc., a small furrier supply company which had for many years regularly done business with Ace Fastener Company, was approached by Slepp, who proposed to sell goods at a substantial discount from the listed price in exchange for immediate payment being made directly to Slepp himself. Although Ace's salesmen had in the past delivered products to defendant and received payment made out to Ace Fastener Company, defendant's suspicions were aroused because it had never before been offered such reduced merchandise or been requested to make payment in this manner. Accordingly, defendant's president telephoned Fred Riley, Ace's national sales manager, to verify the arrangement suggested by Slepp. Riley, a high-ranking official of Ace Fastener Company in charge of developing the sales program and coordinating the activities of the field salesmen, possessed authority over the granting of discounts, the establishment of sales terms and the method of payment. After Riley confirmed that payment be made directly to Slepp, defendant proceeded with the transaction.

Subsequently, an internal conspiracy at Ace Fastener Company was uncovered which ultimately resulted in criminal convictions for both Riley and Slepp, who pleaded guilty on September 16, 1983 in the United States District Court for the Northern District of Illinois. As indicated by the minutes of the court proceedings and acknowledged by plaintiff, the conspiracy involved a diversion of company merchandise by the two men, which was then sold by Slepp to established customers, primarily in New York and New Jersey. Slepp billed the customers, obtained checks in payment and deposited them to his own account. The proceeds of the sale were shared by Slepp and Riley. Riley, for his part, concealed the theft by issuing credit memos for returned merchandise, billing nonexistent customers, billing other customers for the diverted product and then intercepting the outgoing invoices, having the credit department forward to him all past due credit collections emanating from the New York and New Jersey area and arranging for the shipment of all diverted Ace products to Slepp's customers. It should be noted that a third employee and conspirator, not indicted, assisted in the scheme by culling out invoices and other documents so as to prevent customers from learning that the merchandise bought and paid for by them was not actually being credited to their accounts. There is no claim that defendant herein participated in the criminal conspiracy or was in any way aware of its existence.

Plaintiff is endeavoring to recover from defendant the value of the goods which the latter unwittingly procured from Slepp. Both parties sought summary judgment in their favor. The Supreme Court granted plaintiff's motion, concluding that a purchaser who deals with a thief, even in good faith, can never receive good title to the merchandise and is liable to the owner in an action in conversion, citing *Hartford Acc. & Indem. Co. v Walston & Co.* (21 NY2d 219). However, it was not the products herein which were stolen so much as the proceeds of their sale, which properly belonged to Ace Fastener Company. Ace was in the business of manufacturing and selling staplers and parts, and Riley and Slepp, employees of the company, legitimately procured these items for sale to Ace's customers. The illegality that occurred was that instead of acting on behalf of Ace Fastener Company and remitting to Ace all moneys collected in payment for the goods which Riley and Slepp were authorized to market, they concocted a scheme whereby they pocketed the proceeds. Nonetheless, if

Slepp had acted alone in diverting Ace's funds, and defendant buyer had relied upon Slepp's representations, it would have been required to assume the loss since "[t]he mere creation of an agency for some purpose does not automatically invest the agent with 'apparent authority' to bind the principal without limitation * * *. An agent's power to bind his principal is coextensive with the principal's grant of authority. One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority * * *. Upon failure to properly determine the scope of authority, and in the face of damages resulting from an agent's misrepresentations, 'apparent authority' is not automatically available to the injured third party to bind the principal. Rather, the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent" (Ford v Unity Hosp., 32 NY2d 464, 472-473). In Greene v Hellman (51 NY2d 197, 204) the Court of Appeals, in describing the concept of apparent authority, declared that:

"Apparent authority may exist in the absence of authority in fact, and, if established, may bind one to a third party with whom the purported agent had contracted even if, as in the present case, the third party is unable to carry the burden of proving that the agent actually had authority.

"As with implied actual authority, apparent authority is dependent on verbal or other acts by a principal which reasonably give an appearance of authority to conduct the transaction, except that, in the case of implied actual authority, these must be brought home to the agent while, in the apparent authority situation, it is the third party who must be aware of them".

The Court of Appeals further discussed the meaning of "apparent authority" in Hallock v State of New York (64 NY2d 224, 231) wherein it asserted that "[e]ssential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority". Rather, the court citing its previous decision in Ford v United Hosp. (supra) reaffirmed the holding therein that " 'the existence of "apparent authority" depends upon a factual showing that the third party relied upon the misrepresentation of the agent because

of some misleading conduct on the part of the principal—not the agent' " (supra, 64 NY2d, at 231).

The record of the present matter clearly demonstrates that defendant did not rely upon Slepp's statements but, when confronted with the unusual offer of being able to obtain greatly discounted merchandise in return for immediate and direct payment to Slepp, attempted to ascertain the scope of the salesman's authority by making further inquiry. The individual whom defendant consulted in that respect was Fred Riley, characterized by Fred F. Bircher, the credit manager of Ace Fastener Company and the person who was produced by plaintiff for examination before trial, as "probably number three" in Ace's organizational structure. At his deposition, Bircher agreed that Riley, the national sales manager, was the official who responded to customers' questions and had a title indicating knowledge of the company's sales policy. Therefore, Bircher conceded, calling Riley was an appropriate way of checking out the scope of Slepp's authority. While plaintiff does not challenge defendant's assertion that it contacted Riley, who unequivocally supported Slepp's statements, it argues that Riley himself lacked the authority to approve payment to Ace Fastener Company by a check payable to Slepp. According to plaintiff, when faced with such a departure from normal practice as that proposed by Slepp, it was incumbent upon defendant to secure the corporate charter, bylaws and resolutions of the company before it could enter into any transactions providing for direct payment to a salesman.

The fact is, however, that a corporation can only act through its agents. If the third highest ranking officer of a corporation cannot be construed as a "principal" so as to authorize the conduct of lower level agents, it is difficult to conceive of anyone upon whose representations a customer can rely. Is it necessary that a customer solicit the advice of the president of the company or, where appropriate, the chairman of the board of directors before the principal can be deemed to have been consulted? Or can a high corporate officer be considered a principal only in those instances in which he, unlike Riley, is ultimately shown to be honest, and the value of his statements is dependent not upon his position in the corporate hierarchy but upon facts subsequently revealed? Or must a customer, as plaintiff seems to urge, retain legal counsel to pour through corporate documents before it can ever be assured that it is justified in accepting the

representation of a company's agent? Indeed, in the final analysis, plaintiff appears to be contending that a customer may never rely upon statements made by a corporate official, no matter how highly placed that official is, and that the principal can never be an individual but some amorphous collection of bylaws, resolutions and other corporate documents. Yet, merely pronouncing such a standard is tantamount to demonstrating its absurdity. If a corporation endows a high corporate officer with authority and that officer makes representations which are reasonably relied upon by a third party, the corporation may not thereafter simply disclaim those representations because it is benefited by doing so. Defendant herein could reasonably have recourse only to corporate agents, not to some inanimate corporate documents, and, in that regard, defendant took the only reasonable action available to it—it consulted one of the top officers of Ace Fastener Company, the national sales manager, who possessed the apparent authority to confirm Slepp's authority. Consequently, plaintiff is estopped from now denying the actual authority of Riley, and defendant is entitled to summary judgment dismissing the complaint.

Therefore, the order and judgment (one paper) of the Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered on November 10, 1987, which, *inter alia,* granted plaintiff's motion pursuant to CPLR 3212 for partial summary judgment and denied defendant's cross motion for summary judgment, should be reversed on the law, plaintiff's motion for partial summary judgment denied and defendant's cross motion for summary judgment dismissing the complaint granted, with costs and disbursements.

CARRO, J. P., ASCH and WALLACH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on November 10, 1987, unanimously reversed, on the law, plaintiff's motion for partial summary judgment denied, the judgment vacated, and defendant's cross motion for summary judgment dismissing the complaint granted, without costs and without disbursements.