■ INDOSUEZ INTERNATIONAL FINANCE B.V., Respondent, v NATIONAL RESERVE BANK, Appellant. [720 NYS2d 102] —Order and judgment (one paper), Supreme Court, New York County (Barry Cozier, J.), entered May 31, 2000, confirming a Special Referee's report, and, in accordance with its recommendations, awarding damages in favor of plaintiff and against defendant in the amount of $119,691,956.02, inclusive of interest, costs and disbursements, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered October 22, 1999, which, *inter alia*, granted plaintiff's motion for partial summary judgment on liability, referred the issue of damages to a Special Referee, and denied defendant's cross motion to dismiss the complaint, unanimously dismissed, without costs, as subsumed within the appeal from the judgment.

Plaintiff, a Netherlands bank doing business in Switzerland, sued defendant, a Russian bank, for moneys due in connection with currency exchange transactions evidenced by 14 confirmations. Defendant contends that the transactions are invalid because the individual who signed the 14 confirmations on its behalf, its Deputy Chairman, lacked authority under Russian law to do so. Consequently, defendant further argues, the English or New York choice of law and forum provisions in the confirmations are also invalid. While we accept that the parties would not be bound by choice of law and forum provisions contained in a contract that is otherwise invalid (*cf., Arkwright-Boston Mfrs. Mut. Ins. Co. v Energy Ins. Agency*, 659 F Supp 97, 98 [SD Tex]), nevertheless, applying traditional choice of law principles, we conclude that New York law applies, since payment of the obligations was to be made in United States dollars at a New York bank, and New York has a paramount interest, "as an international clearinghouse and market place for a plethora of international transactions" denominated in United States dollars, in ensuring orderly dollar currency transactions (*see, Zeevi & Sons v Grindlays Bank*, 37 NY2d

220, 227, *cert denied* 423 US 866). While Russia has a significant interest in that defendant is a Russian company being called upon to perform contracts it executed in Russia, Russia's interest, in comparison to New York's, is undermined by the circumstance that defendant's defaults were precipitated by a Russian currency crisis and the Russian government's proclamation of a debt repayment moratorium.

Application of New York law leads to the conclusion that defendant's Deputy Chairman was vested with apparent authority to enter into these transactions, based on, *inter alia*, defendant's acceptance of plaintiff's premiums and failure to otherwise object to its Deputy Chairman's actions over a two-year period of time (*see, Hallock v State of New York*, 64 NY2d 224, 231; *Federal Ins. Co. v Diamond Kamvakis & Co.*, 144 AD2d 42, 47, *lv denied* 74 NY2d 604).

We reject defendant's claim that New York lacks personal jurisdiction. Six of the confirmations contained explicit New York forum selection clauses, and the aforesaid validity of the contracts gives these provisions full effect. The remaining confirmations, which contained either no forum selection clause or one that designated the "courts of England or any other courts of competent jurisdiction," are subject to jurisdiction in New York under Banking Law § 200-b (2) (a), since the payments in all instances were made in New York, by virtue of either an express provision in the confirmation, or plaintiff's subsequent designation of New York as the place of payment, as permitted by the confirmation. Such subsequent designation of New York banks does not raise due process, conscionability or other concerns, where all of the confirmations indicated that payments were to be made in United States dollars and defined "Business Day" as any day on which New York banks were open, two of the confirmations specifically designated New York as the place of payment and ten of the confirmations chose New York as the governing law. New York thus bore a rational relationship to the transactions from the outset, even if not specifically chosen as the forum.

Given jurisdiction under the Banking Law, the issue of whether there is jurisdiction under the Master Form of the International Swap Dealers Association is academic. We note, however, that the language of the confirmations indicates that the parties, although endeavoring to do so, had not yet reached an agreement to incorporate the Master Form. Concur— Nardelli, J. P., Williams, Andrias, Wallach and Lerner, JJ.