[749 NYS2d 216]

VIRGINIA T. PARLATO et al., Appellants, v EQUITABLE LIFE
ASSURANCE SOCIETY OF THE UNITED STATES, Respondent.

First Department, October 17, 2002

**APPEARANCES OF COUNSEL**

*Steven M. Lester* for appellants.

*Larry H. Krantz* of counsel (*Mary Lou Chatterton* and *Marjorie Berman* on the brief; *Krantz & Berman LLP*, attorneys), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

Plaintiffs, who are sisters, were defrauded by Kenneth Soule, an agent of defendant Equitable Life Assurance Society of the United States (Equitable), beginning while Soule was employed by Equitable and continuing after Equitable terminated him in July 1992. Soule actually opened an Equitable account for one plaintiff, but he did not do so for the other, instead stealing all the funds that plaintiff entrusted to him. While plaintiffs' claims based on frauds perpetrated during Soule's employment by Equitable are time-barred, their claims based on certain of the posttermination frauds are not. Thus, the main issues to emerge on this appeal are whether Equitable had a duty to notify Soule's customers of his termination, and, if so, whether its failure to give such notice to the plaintiff who had an actual account may provide a basis for holding it liable, not only to that plaintiff, but also to the other plaintiff, of whom Equitable was totally unaware. Under the facts alleged, we hold that the plaintiff who was a known customer of Equitable has stated a cause of action, but that the other plaintiff has not.

The relevant allegations, which we are required to treat as true on this appeal from a judgment dismissing the complaint pursuant to CPLR 3211, are set forth in the proposed amended complaint, and in plaintiffs' respective affidavits submitted in opposition to Equitable's motion to dismiss. Equitable hired Soule on or about April 1, 1990, as an agent authorized to sell Equitable financial products, such as insurance policies and annuities, to the public. Before becoming an Equitable agent, Soule from 1986 onward had been plaintiff Parlato's accountant and financial advisor. Parlato, a resident of Queens, began investing in Equitable financial products through Soule in May 1990, and Soule actually opened several Equitable accounts in Parlato's name while he was an Equitable agent. In the spring of 1992, however, Soule began criminally defrauding Parlato. Between March and May of 1992, Parlato, at Soule's urging, liquidated certain of her non-Equitable investments, and entrusted the proceeds to Soule for investment in Equitable financial products. Soule converted these funds, and all additional funds that Parlato subsequently entrusted to him, to his personal use.

In 1991, Soule began soliciting plaintiff Perry, Parlato's sister and a resident of Hawaii, to invest in Equitable products. In May 1992, Perry began entrusting funds to Soule to be used to open investment accounts for her at Equitable. Unlike Parlato, however, Perry alleges that Soule never opened any Equitable account for her, and that, from the start, he misappropriated every penny she ever entrusted to him. Thus, prior to the instant litigation, Perry was unknown to Equitable.

Equitable terminated Soule's employment in July 1992. Although Parlato allegedly still had an account with Equitable at that time, Equitable did not notify her of the termination. For approximately four years after his termination, Soule allegedly continued to represent himself to plaintiffs as an Equitable agent and to solicit their further investment in purported Equitable financial products. Plaintiffs do not allege, however, that they were exposed to any manifestations by Equitable of a continuing connection between Soule and Equitable after July 1992.

In August 1996, plaintiffs contacted Equitable to verify the status of their investments. At that time, Equitable informed plaintiffs that Soule had been terminated by Equitable in July 1992. This allegedly was the first time plaintiffs became aware that Soule's relationship with Equitable had been severed. Plaintiffs then alerted law enforcement authorities to Soule's misconduct. Ultimately, Soule pleaded guilty to a federal charge of mail fraud, and was sentenced to 27 months in prison and three years of supervised release, conditioned on his promise to make restitution in the amount of $416,000.

Plaintiffs commenced this action against Equitable in December 1999. Each plaintiff asserted a cause of action for fraud, based on the contention that she entrusted her money to Soule in reliance on the appearance of authority to act for Equitable with which the company had clothed him. In lieu of answering the complaint, Equitable moved to dismiss the complaint on grounds of the statute of limitations and failure to state a cause of action (CPLR 3211 [a] [5], [7]). Supreme Court granted the motion in its entirety. Insofar as the claims were based on frauds Soule committed after he was terminated, Supreme Court found that Equitable could not be held liable for such acts in the absence of any allegation that Equitable, by its own affirmative acts, "continued to imbue [him] with apparent authority" after his termination. Insofar as the claims were based on frauds Soule committed prior to his termination, Supreme Court found them time-barred. Judgment

dismissing the complaint was subsequently entered, and plaintiffs have appealed.[1]

In considering this appeal, it is helpful to keep in mind the Court of Appeals' explanation of the concept of apparent authority, the doctrine which underlies plaintiffs' claims:

> "Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority. 'Rather, the existence of "apparent authority" depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent.' * * * Moreover, a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable." (*Hallock v State of New York*, 64 NY2d 224, 231 [citations omitted].)

We further note that, given that this action has not proceeded beyond the pleading stage, and no details concerning either the scope of Soule's apparent authority or the nature of the fraudulent transactions are before us, we are required to assume the truth of plaintiffs' allegation that the transactions, as proposed by Soule, would have been within the scope of the apparent authority with which Equitable clothed him during his employment.

Against the foregoing background, we proceed to address the following questions raised by this appeal: (1) whether Equitable may be held liable on a theory of apparent authority for tortious and even criminal acts Soule perpetrated solely for his own benefit; (2) to what extent, if any, plaintiffs' fraud causes of action are barred by the statute of limitations; and (3) whether Equitable can be held liable on a theory of apparent authority to either plaintiff, or both of them, for frauds Soule perpetrated after he was terminated.

---

1. Plaintiffs' notice of appeal, which was served after judgment was entered, refers only to the order granting the motion to dismiss, the right of direct appeal from which abated upon entry of the judgment (*see Matter of Aho*, 39 NY2d 241, 248). We deem the appeal to be taken from the judgment pursuant to CPLR 5520 (c).

*Effect of Soule's Acting Solely for His Own Benefit*

At the outset, Equitable argues that it cannot be held liable for any of the frauds Soule committed against either plaintiff, on the ground that Soule was not acting in furtherance of Equitable's business when he stole plaintiffs' money. Evidently, it is Equitable's theory that it should be dispositive of both plaintiffs' claims in their entirety that, even if Soule appeared to have authority to solicit plaintiffs' investments, he had no apparent authority to swindle them. By this reasoning, a principal could never be held liable in tort for its agent's misuse of his authority to defraud a third party. We decline to adopt this view.

■ Contrary to Equitable's position, it is well established that a principal may be held liable in tort for the misuse by its agent of his apparent authority to defraud a third party who reasonably relies on the appearance of authority, even if the agent commits the fraud solely for his personal benefit, and to the detriment of the principal (*see Hatton v Quad Realty Corp.*, 100 AD2d 609, 610, *lv denied* 63 NY2d 608; *see also Citibank, N.A. v Nyland [CF8] Ltd.*, 878 F2d 620, 624 [2d Cir]; *Rocks & Jeans v Lakeview Auto Sales & Serv.*, 184 AD2d 502, 503; Restatement [Second] of Agency §§ 261, 262, 265 [1]; 2A NY Jur 2d, Agency and Independent Contractors §§ 290, 291, 295 [1998 rev]; *contra, Adler v Helman*, 169 AD2d 925). The reason for this rule is that the principal, by virtue of its ability to select its agents and to exercise control over them (*see* Restatement [Second] of Agency § 1 [1]), is in a better position than third parties to prevent the perpetration of fraud by such agents through the misuse of their positions. Thus, the principal should not escape liability when an innocent third person suffers a loss as the result of an agent's abuse, for his own fraudulent purposes, of the third person's reasonable reliance on the apparent authority with which the principal has invested the agent. Stated otherwise, "as between two innocent parties the one who has allowed the fraud to be perpetrated should bear the loss" (*Hatton v Quad Realty Corp.*, 100 AD2d at 610, *supra*; *see also* Restatement [Second] of Agency § 261, Comment *a*; § 262, Comment *a*).

In considering a principal's potential liability for the tortious acts of its agent, it is important to distinguish the doctrine of apparent authority, which is at issue in this action, from the distinct and separate doctrine of respondeat superior. To succeed on a respondeat superior theory, a plaintiff need not show either apparent authority or reasonable reliance thereon, but must show that the agent was acting "in furtherance of the

[principal's] business and within the scope of employment" (*N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251; *see also Prudential-Bache Sec. v Citibank*, 73 NY2d 263, 276). By contrast, where, as here, the asserted basis for the principal's liability is apparent authority, there is no requirement that the tortious act be committed in furtherance of the principal's business. The plaintiff suing on the basis of apparent authority is required, however, to prove that the principal created an appearance of authority on which the plaintiff reasonably relied, thereby enabling the agent to successfully perpetrate the tort (*see e.g. N.X. v Cabrini Med. Ctr.*, 97 NY2d at 252 n 3).

*Statute of Limitations*

█ Having established that the fact that Soule defrauded plaintiffs solely for his personal benefit does not necessarily preclude plaintiffs' claims against Equitable, we now turn to the effect of the statute of limitations on the viability of those claims. The applicable limitation period for a fraud cause of action is six years from the time the fraud was perpetrated (CPLR 213 [8]).[2] Thus, because this action was commenced on December 28, 1999, plaintiffs' claims are time-barred to the extent they are based on any transactions that occurred prior to December 28, 1993. After that date, it is claimed that Soule defrauded Parlato of $5,000 in March 1995 and $5,000 in February 1996, and that he defrauded Perry of an amount in excess of $200,000 during the period from March through June of 1994.

Plaintiffs argue that the "continuous representation" doctrine tolls the running of the statute of limitations until 1996, when they stopped using Soule as their financial adviser, thereby saving the portion of their claims based on frauds Soule perpetrated more than six years prior to the commencement of this action. We find this argument unavailing. For the "continuous representation" doctrine to apply, "the continuous representation must be in connection with the particular transaction which is the subject of the action * * * and not merely during the continuation of a general professional relationship" (*Zaref v Berk & Michaels*, 192 AD2d 346, 347-348 [citations omitted]). Here, although plaintiffs claim that Soule had a

---

2. The provision that an action for fraud may be commenced within two years after the plaintiff discovered the fraud, or could with reasonable diligence have discovered it (CPLR 203 [g]; 213 [8]), is not relevant to this case. Plaintiffs' own allegations establish that they discovered Soule's fraud no later than August 1996, more than three years before they commenced this action.

continuous professional relationship with them through some point in 1996, Soule's advice related to a series of discrete and severable transactions. The complaint was therefore correctly dismissed to the extent it asserts claims by either plaintiff based on transactions that occurred prior to December 28, 1993.

*Effect of Soule's Termination on His Apparent Authority*

As discussed above, by reason of the operation of the statute of limitations, any viable claims plaintiffs may have must be based on transactions that occurred after Equitable terminated Soule in July 1992. Moreover, as previously noted, there is no allegation that Equitable itself (as opposed to Soule) engaged in any affirmative conduct, after Soule's termination, that gave plaintiffs the false impression that Soule continued to be an Equitable agent. The final question before us, therefore, is whether, under these circumstances, Equitable's termination of Soule's employment in July 1992 had the effect, as a matter of law, of immediately cutting off his apparent authority to act for Equitable vis-à-vis the two plaintiffs. This question cannot be answered in the abstract. Rather, since the two plaintiffs are situated differently, the question must be addressed separately as to each plaintiff.

We hold that Parlato's claim, to the extent it is not time-barred, should not have been dismissed on a motion addressed to her pleading. The Court of Appeals has held that a third party who, like Parlato, is known by a principal to have previously dealt with the principal through the principal's authorized agent, is entitled to assume that the agent's authority continues until the third party receives notice that the principal has revoked the agent's authority (*see McNeilly v Continental Life Ins. Co.*, 66 NY 23, 28; *Barkley v Rensselaer & Saratoga R.R. Co.*, 71 NY 205, 207; *Claflin v Lenheim*, 66 NY 301, 305, 308; *see also Land Oberoesterreich v Gude*, 109 F2d 635, 639 [2d Cir], *cert denied* 311 US 670 [applying New York law]; *Matter of Owego Props. v Campfield*, 182 AD2d 1058, 1059; *Stevens v Schroeder*, 40 App Div 590, 592; 2A NY Jur 2d, Agency and Independent Contractors § 41, at 94-95 [1998 rev]; 68 NY Jur 2d, Insurance § 425, at 610 [1998 rev]). The law of other states appears to be similar (*see* Restatement [Second] of Agency §§ 124A, 125, 127, 135, 136 [1], [2]; Restatement [Third] of Agency § 3.11 and Comments *c*, *d* thereto [Tentative Draft No. 2, Mar. 14, 2001]; 3 Couch, Insurance 3d § 44:70, at 44-79). In recognizing this duty of a principal to give notice of the revocation of an agent's authority, we are simply applying established principles.

In this case, Parlato alleges that Soule opened actual Equitable investment accounts for her while he was still an authorized agent of Equitable. If this is proven to be so, Parlato will be entitled to the benefit of the above-described rule permitting her, as a person known to have done business with Equitable through Soule in the past, to presume that Soule remained authorized to act for Equitable in the absence of either (1) notice that his authority had been revoked or (2) other circumstances that would have rendered it unreasonable to believe that Soule had authority to act for Equitable in the transactions he proposed (*see Standard Funding Corp. v Lewitt*, 89 NY2d 546, 551-552; *Collision Plan Unlimited v Bankers Trust Co.*, 63 NY2d 827, 831; *Heffernan v Marine Midland Bank*, 267 AD2d 83, 84; *see also FDIC v Providence Coll.*, 115 F3d 136, 141-142; Restatement [Second] of Agency § 125, Comment *b*; Restatement [Third] of Agency § 3.11 [2] [Tentative Draft No. 2, Mar. 14, 2001]). Before any determination can be made as to whether it was reasonable for Parlato to believe that Soule had authority to act for Equitable in the transactions for which her claims are not time-barred, the particular facts of this case must be developed through discovery. Therefore, it was error to dismiss Parlato's claim on this pleading motion.

This brings us to the question of the viability of Perry's claim against Equitable. Perry alleges that Soule stole all of the money she entrusted to him, and that he never opened any Equitable account in her name. Thus, Perry's own allegations establish that Equitable had no way of notifying her of Soule's termination in July 1992. Under these circumstances, we hold that any apparent authority Soule may have had vis-à-vis Perry terminated along with his actual authority when his employment by Equitable came to an end.

Considerations of fairness, practicality and sound public policy lead us to this conclusion. Even in the case of a third party unknown to the principal, it seems fair to hold the principal responsible for the agent's misuse of his apparent authority while the principal-agent relationship continues to exist, bringing benefits to the principal and giving the principal a measure of control over the agent's conduct (*see* Restatement [Second] of Agency § 1 [1] [an agent acts on behalf of the principal subject to the principal's control]). It seems unfair, however, to hold the principal responsible for torts its former agent commits after termination against an unknown third party, even if the former agent facilitates his wrongdoing by misrepresenting to the victim that the agency relationship is

still in existence. Once the agent's employment has been terminated, the principal no longer has any power to control the agent's conduct. Moreover, the principal obviously cannot give notice of the agent's termination to a third party that is totally unknown to it. The law, of course, "does not require the impossible * * *" (*Matter of Merlino v Schneider*, 93 NY2d 477, 485, quoting *Matter of Sloat v Board of Examiners*, 274 NY 367, 373). Further, allowing claims against a principal based on a former agent's posttermination torts against unknown third parties would subject the principal to potentially unlimited liability.

It might be argued that Perry's claim should be permitted to go forward because, in this particular case, the harm to Perry could have been avoided if Equitable had notified her sister, Parlato, a person known to Equitable, that Soule had been terminated. We believe, however, that the causal link between the principal's failure to notify a known customer of the termination of the agent with whom she dealt, and the former agent's subsequent commission of a tort against a person totally unknown to the principal who happens to be a friend or relative of the customer, is too attenuated to serve as a basis for liability. There can be no assurance that the customer, if given notice of the agent's termination, will pass the information on to the unknown friend or relative. Thus, it cannot be said that the fraud Soule perpetrated against Perry after his termination would not have occurred "but for" Equitable's failure to notify Parlato of Soule's termination. In any event, there is no telling how many relatives or friends of a given customer a dishonest agent may defraud without ever opening actual accounts with the principal for such persons. Again, to hold the principal liable for all frauds the agent may perpetrate against such persons, no matter how much time has passed since the agent's termination, opens the door to unlimited liability. Since the principal obviously has never received any benefit from the agent's dealings with persons unknown to the principal, this result seems unwarranted.[3]

---

3. It is true that in *Johnson v Nationwide Gen. Ins. Co.* (971 F Supp 725 [ND NY], *affd without published op* 162 F3d 1148 [2d Cir]), liability was imposed on Nationwide for a fraud its former agent (Donnelly) perpetrated against a third party (Donnelly's sister-in-law) who had been aware of Donnelly's agency before he was terminated, but who did not actually deal with Donnelly until after his termination. *Johnson* is not binding on this Court, of course, and, to the extent it is inconsistent with our present decision, we decline to follow it. In any event, *Johnson* is distinguishable from the instant

The appeal of permitting Perry to sue Equitable based on its failure to notify Parlato of Soule's termination lies in the fact that Perry and Parlato happen to be sisters. It is natural to assume that Parlato, if she had received such notification from Equitable, would have alerted her sister to the fact that Soule no longer worked for Equitable. In other cases, however, the relation between the known victim and the unknown victim of the dishonest agent will be more distant and incidental than it is here. Obviously, we cannot and should not create a special rule limited in application to siblings or other close relatives. The only principled basis on which to put a reasonable limit on the principal's potential liability for failing to notify a known customer of an agent's termination is to limit that liability to the losses suffered by the known customer herself.

Finally, the amended complaint alleges that Equitable "made no effort to alert the public in general that Soule was no longer its agent * * *." It is true that section 136 (3) of the Restatement (Second) of Agency (published in 1958) takes the position that, absent public notice (as by advertisement in a newspaper of general circulation) of revocation of an agent's authority in the area in which he formerly acted for the principal, apparent authority continues to exist after such revocation as to persons who previously knew of the agency and do not receive actual notice of the revocation, even if such persons never previously did business with the agent and thus are unknown to the principal. While this rule (hereinafter, the "public notice rule") finds support in a number of very old New York cases (*see Claflin v Lenheim*, 66 NY at 305, *supra*; *Marshall v Reading Fire Ins. Co.*, 78 Hun 83, 85, 29 NYS 334, 335, *affd* 149 NY 617; *Lynch v Rabe*, 28 Misc 215; *but see Greentaner v Connecticut Fire Ins. Co. of Hartford*, 228 NY 388, 393), we do not regard the public notice rule as binding at this late date, at least under the particular facts alleged by plaintiffs. There is no statutory or regulatory mandate for public notice in this context (*cf.* Partnership Law § 66 [1] [b] [II]), and the most recent New York cases giving support to the rule appear to be from the era when the telephone was a relatively new and uncommon device. Today, a person dealing with an individual known to have represented a company in the past can easily verify that the individual is still an agent for the company by contacting the company by telephone. Moreover,

---

case, in that Nationwide had extensively advertised Donnelly's agency while it existed, and had even published his photograph in the regional edition of Time magazine.

there is no reason to believe that the newspaper advertisements contemplated by the public notice rule would actually be read by customers such as plaintiffs in this action. This is particularly so in the case of plaintiff Perry, who, as a resident of Hawaii, would have been highly unlikely to come across a newspaper advertisement announcing Soule's termination in the New York area (*see* Restatement [Second] of Agency § 136 [3] [a] [public notice rule is satisfied by publication "in a newspaper of general circulation in the place where the agency is regularly carried on"]). We therefore decline to ascribe legal significance to Equitable's alleged failure to give public notice of Soule's termination.

Accordingly, the judgment of the Supreme Court, New York County (Herman Cahn, J.), entered October 4, 2000, from which the appeal is deemed to be taken pursuant to CPLR 5520 (c), and which, insofar as appealed from, as limited by the briefs, dismissed plaintiffs' fraud causes of action pursuant to an order, same court and Justice, entered September 26, 2000, granting Equitable's motion to dismiss the complaint pursuant to CPLR 3211 (a) (5) and (7), should be modified, on the law, to vacate the dismissal of plaintiff Virginia T. Parlato's cause of action for fraud to the extent it is based on frauds perpetrated on or after December 28, 1993, to that extent the motion should be denied and the complaint reinstated, and the judgment should be otherwise affirmed, without costs.

NARDELLI, J.P., TOM, SAXE and SULLIVAN, JJ., concur.

Judgment, Supreme Court, New York County, entered October 4, 2000, which, insofar as appealed from, as limited by the briefs, dismissed plaintiffs' fraud causes of action, modified, on the law, to vacate the dismissal of plaintiff Parlato's cause of action to fraud to the extent based on frauds perpetrated on or after December 28, 1993, the complaint reinstated to that extent, and the judgment otherwise affirmed, without costs.