◼ ROBERT SUMNER et al., Respondents, v DANIEL D. HOGAN, as Chairman of the New York State Racing and Wagering Board, et al., Appellants. TROY STABLES, LLC, et al., Respondents, v DANIEL D. HOGAN, as Chairman of the New York State Racing and Wagering Board, et al., Appellants. [901 NYS2d 236]—

Order and judgment (one paper), Supreme Court, New York County (Marilyn Shafer, J.), entered April 1, 2009, which, insofar as appealed, granted horse owners' CPLR article 78 petitions to the extent that they challenged two regulations of respondent New York State Racing and Wagering Board (9 NYCRR 4120.14, 4121.5) as violative of petitioners' due process rights by requiring pre-race detention, allegedly without notice, hearing, right of appeal or right to seek a stay, of horses not found to exceed total carbon dioxide (TCO2) levels, but whose trainers had two violations within a 12-month period, unanimously reversed, on the law, without costs, the petitions denied and the proceedings dismissed.

These two proceedings challenge regulations of respondent New York State Racing and Wagering Board (Racing Board) governing standardbred (harness) racehorses. The regulations requiring pre-race detention of horses are designed to detect and prevent the practice of "milkshaking," which is the administering of baking soda combined with other substances to the horse before a race for the purpose of neutralizing lactic acid build-up, slowing the onset of fatigue, and presumably enhancing the horse's performance. Since the substance wears off within four to six hours, milkshaking typically occurs shortly before a horse is raced.

"[O]ne who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law," which rule need not be followed where the action is challenged as unconstitutional (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57 [1978]). However, "[c]ouching an adverse administrative decision in terms of a constitutional violation will not excuse a litigant from pursuing administrative remedies that can provide the requested substantive relief . . . where resolution of the constitutional claim . . . rests on factual issues that are reviewable administratively" (*Siao-Pao v Travis*, 23 AD3d 242, 242-

243 [2005]; *see also Matter of Schulz v State of New York*, 86 NY2d 225, 232 [1995], *cert denied* 516 US 944 [1995]).

Here, an administrative appeal could have granted petitioners all the relief requested by allowing the Board to determine whether, for these particular owners, notice to their trainers was sufficient notice to the owners, and more broadly, whether the nature of the relationship between trainer and owner supported the agency principle, with knowledge of the trainer to be imputed to the owner, as well as confirming or rebutting the validity of certain TCO2 violations. The failure to exhaust administrative remedies barred their petition for judicial review.

Even if the petitions were valid, the owners failed to state the deprivation of a cognizable property interest (*see Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627 [2004]). The owners alleged two property deprivations herein: the cost of pre-race detention and the inability to race at racetracks that did not provide pre-race facilities. However, neither interest is protected herein since the Board is not responsible for either. First, the regulations expressly provide that any pre-race detention would be "at the sole expense of the trainer" and not the owner, and racetrack operators are required to "make such pre-race detention available" (9 NYCRR 4120.14 [a], [b]). Any deviation from the regulations is not state action but private conduct, and "private conduct will not invoke the constitutional guarantees of due process" (*Blye v Globe-Wernicke Realty Co.*, 33 NY2d 15, 19 [1973]).

Nor should the court have found a violation of procedural due process since the owners were afforded adequate procedures to challenge the imposition of pre-race detention. While they claim lack of direct notice, notice to the trainer, as agent of the owner, constituted notice to the owner since the trainer's actions were "in furtherance of the [owner's] business and within the scope of employment" (*Parlato v Equitable Life Assur. Socy. of U.S.*, 299 AD2d 108, 113-114 [2002], *lv denied* 99 NY2d 508 [2003] [internal quotation marks and citation omitted]). Because even a single TCO2 violation could put a trainer's license in jeopardy (9 NYCRR 4120.13 [d]), and put all of a trainer's owners at risk of having their horses placed under pre-race detention if the trainer were to incur a second violation within a year, any TCO2 violation is material to a trainer's responsibility to all his principals, and thus notice given to a trainer of a TCO2 violation would be properly imputed to his owners.

Further, owners also receive notice of their trainers' violations through widely available public sources, including the Racing Board's Web site, on which the Board maintains an

updated list of TCO2 violations that identifies the names of the trainer and drugged horse and notes whether pre-race detention was imposed (*see* NY Racing & Wagering Bd, TCO2 Pre-Race Detention List, http://www.racing.state.ny.us/racing/tco2.php), and a comprehensive database of violation rulings maintained by the United States Trotting Association. Concur—Andrias, J.P., Saxe, McGuire, Moskowitz and Freedman, JJ.