Canfield Funding, LLC v Focalpointe Group, LLC (2025 NY Slip Op 04374)

Canfield Funding, LLC v Focalpointe Group, LLC

2025 NY Slip Op 04374

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., BANNISTER, OGDEN, GREENWOOD, AND KEANE, JJ.

517 CA 24-00417

[*1]CANFIELD FUNDING, LLC, PLAINTIFF-RESPONDENT-APPELLANT,
v
FOCALPOINTE GROUP, LLC, MICHAEL MANN, DEFENDANTS, UNITEDHEALTH GROUP INCORPORATED, OPTUM, INC., AND OPTUMINSIGHT, INC., DEFENDANTS-APPELLANTS-RESPONDENTS. 

CONNORS LLP, BUFFALO (RANDALL D. WHITE OF COUNSEL), FOR DEFENDANTS-APPELLANTS-RESPONDENTS. 
MAGAVERN MAGAVERN GRIMM LLP, BUFFALO (EDWARD J. MARKARIAN OF COUNSEL), FOR PLAINTIFF-RESPONDENT-APPELLANT. 

 Appeal and cross-appeal from an order of the Supreme Court, Erie County (Emilio Colaiacovo, J.), entered January 23, 2024. The order, among other things, denied in part the motion of defendants UnitedHealth Group Incorporated, Optum, Inc. and Optuminsight, Inc. to dismiss the complaint against them. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting that part of the motion seeking to dismiss the fraudulent misrepresentation cause of action to the extent that it is based on fraudulent acts occurring prior to August 15, 2016, and as modified the order is affirmed without costs.
Memorandum: Plaintiff commenced this action seeking to recover damages it sustained in a fraudulent scheme perpetrated by defendant Focalpointe Group, LLC (Focalpointe) and its principal, defendant Michael Mann. Plaintiff also named as defendants UnitedHealth Group Incorporated, Optum, Inc., and Optuminsight, Inc. (UHG/Optum defendants), whose employees allegedly assisted Mann in his fraudulent scheme. As against UHG/Optum defendants, plaintiff asserted causes of action for fraudulent misrepresentation, aiding and abetting fraud, and negligent supervision. UHG/Optum defendants moved to dismiss the complaint against them pursuant to, inter alia, CPLR 3211 (a) (5), (7), and (8). Plaintiff did not contest the dismissal of the aiding and abetting fraud cause of action, and Supreme Court granted the motion insofar as it sought dismissal of that cause of action as well as the cause of action for negligent supervision against UHG/Optum defendants, but otherwise denied the motion. UHG/Optum defendants appeal, and plaintiff cross-appeals.
Contrary to UHG/Optum defendants' contention on their appeal, the court properly denied that part of the motion seeking to dismiss the fraudulent misrepresentation cause of action against them for failure to state a cause of action. On a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, we must "accept the facts as alleged in the complaint as true, accord [the]
plaintiff[ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582, 591 [2005]). "Whether a plaintiff can ultimately establish [their] allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]; see Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 38 [2018]).
"Generally, in a claim for fraudulent misrepresentation, a plaintiff must allege a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of [*2]the other party on the misrepresentation or material omission, and injury" (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178 [2011] [internal quotation marks omitted]).
Here, plaintiff alleges that it provides accounts receivable factoring to businesses whereby it purchases accounts receivable from clients at a discount, the invoices are assigned to plaintiff, and plaintiff then collects those receivables from the third-party debtors. Plaintiff entered an agreement with Focalpointe in October 2013 for plaintiff to purchase accounts receivable from Focalpointe for alleged information technology (IT) services it provided to UHG/Optum defendants. Focalpointe would generate invoices for those services it provided and give those invoices to plaintiff for factoring. Plaintiff verified with UHG/Optum defendants that those invoices from Focalpointe were due and payable. But as it turned out, between November 2013 and September 2019, UHG/Optum defendants did not have a legitimate business relationship with Focalpointe and the invoices were a sham. Mann created accounts to make it appear as if UHG/Optum defendants were making payments on the fraudulent invoices, and he obtained financing from another factoring company to build a pyramid scheme.
Plaintiff alleges that it relied on representations made by UHG/Optum defendants through four of their employees. Plaintiff's primary contact at UHG/Optum defendants was employee number one, a "Director" whose responsibilities included "staffing" and "financial analysis." Employee number one represented that he was responsible for verifying Focalpointe's invoices and verified them on hundreds of occasions over six years. Plaintiff alleges that it also communicated with three other employees of UHG/Optum defendants. In October 2014, employee number two, a "Director" at the New York office of Optum, Inc. and Optuminsight, Inc., confirmed that UHG/Optum defendants' ledger showed open Focalpointe invoices in the same amount as shown by plaintiff and confirmed that plaintiff was noted to be the proper assignee of Focalpointe's open invoices with UHG/Optum defendants. In February 2015, employee number three, a "Vice President" with responsibilities including "vendor management" and "IT delivery," confirmed that Focalpointe had an account balance with UHG/Optum defendants in the amount of $3.4 million and further noted that employee number one was the appropriate contact at UHG/Optum defendants with respect to financial matters. In July 2015, employee number four confirmed that Focalpointe had an account balance with UHG/Optum defendants in the amount of $3.2 million and purported to "approve" additional Focalpointe invoices.
UHG/Optum defendants contend that plaintiff's allegations are insufficient to establish that the four employees had apparent authority to bind UHG/Optum defendants. We disagree. "[A] principal may be held liable in tort for the misuse by its agent of [their] apparent authority to defraud a third party who reasonably relies on the appearance of authority, even if the agent commits the fraud solely for [their] personal benefit, and to the detriment of the principal" (Parlato v Equitable Life Assur. Socy. of U.S., 299 AD2d 108, 113 [1st Dept 2002], lv denied 99 NY2d 508 [2003]; see American Socy. of Mech. Engrs., Inc. v Hydrolevel Corp., 456 US 556, 566 [1982], reh denied 458 US 1116 [1982]; News Am. Mktg., Inc. v Lepage Bakeries, Inc., 16 AD3d 146, 148 [1st Dept 2005]). "[L]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to [them]" (American Socy. of Mech. Engrs., Inc., 456 US at 566 [internal quotation marks omitted]). "The reason for this rule is that the principal, by virtue of its ability to select its agents and to exercise control over them . . . , is in a better position than third parties to prevent the perpetration of fraud by such agents through the misuse of their positions" (Parlato, 299 AD2d at 113). "Thus, the principal should not escape liability when an innocent third person suffers a loss as the result of an agent's abuse, for [their] own fraudulent purposes, of the third person's reasonable reliance on the apparent authority with which the principal has invested the agent" (id.).
"Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction" (Hallock v State of New York, 64 NY2d 224, 231 [1984]; see Standard Funding Corp. v Lewitt, 89 NY2d 546, 551 [1997]; Regency Oaks Corp. v Norman-Spencer McKernan, Inc., 129 AD3d 1454, 1456 [4th Dept 2015], appeal dismissed & lv dismissed 26 NY3d 980 [2015]). "The agent cannot by [their] own acts imbue [themselves] with apparent authority" (Hallock, 64 NY2d at 231; see Regency Oaks Corp., 129 AD3d at 1456; [*3]Federal Ins. Co. v Diamond Kamvakis & Co., 144 AD2d 42, 45 [1st Dept 1989], lv denied 74 NY2d 604 [1989]). "Rather, the existence of apparent authority depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal—not the agent" (Hallock, 64 NY2d at 231 [internal quotation marks omitted]; see Regency Oaks Corp., 129 AD3d at 1456; Federal Ins. Co., 144 AD2d at 45).
Here, plaintiff alleges that the four employees had apparent authority to bind UHG/Optum defendants. Plaintiff alleges that UHG/Optum defendants allowed the four employees to use email accounts and telephones of UHG/Optum defendants during work hours to communicate with plaintiff over a six-year period. The job titles and responsibilities that UHG/Optum defendants gave to the four employees aligned with the transaction that plaintiff sought to verify, i.e., payment for IT staffing, and UHG/Optum defendants, through employee number three, a Vice President, confirmed the existence of a debt owed to Focalpointe and that employee number one was the appropriate contact with respect to financial matters concerning UHG/Optum defendants (see generally Federal Ins. Co., 144 AD2d at 46-47). Thus, plaintiff sufficiently alleges that UHG/Optum defendants "created an appearance of authority on which . . . plaintiff reasonably relied, thereby enabling the agent[s] to successfully perpetrate the tort" of fraudulent misrepresentation (Parlato, 299 AD2d at 114).
UHG/Optum defendants further contend on their appeal that the court erred in failing to grant the motion in its entirety on the basis of lack of personal jurisdiction. We reject that contention. "As the party seeking to assert personal jurisdiction, the plaintiff bears the burden of proof on [that] issue . . . but, [i]n order to defeat a motion to dismiss based upon lack of jurisdiction, a plaintiff need only demonstrate that facts may exist to exercise personal jurisdiction over the defendant[s]" (People v Frisco Mktg. of NY LLC, 93 AD3d 1352, 1353 [4th Dept 2012] [internal quotation marks omitted]; see Altman v DiPreta, 204 AD3d 965, 967 [2d Dept 2022], lv denied 38 NY3d 913 [2022]; Tucker v Sanders, 75 AD3d 1096, 1096 [4th Dept 2010]).
UHG/Optum defendants are foreign corporations with their principal place of business in Minnesota, and plaintiff relies on long-arm jurisdiction under CPLR 302, which provides, in relevant part, that "a court may exercise personal jurisdiction over any non-domiciliary, or [their] executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state" (CPLR 302 [a] [1], [2] [emphasis added]). Here, as noted above, plaintiff sufficiently alleges that UHG/Optum defendants created an appearance of authority with respect to the four employees on which plaintiff reasonably relied, and thus there is an unresolved issue whether those employees were agents acting with apparent authority. We conclude that plaintiff has set forth sufficient facts to render UHG/Optum defendants subject to the court's jurisdiction based on their agents' allegedly tortious conduct in New York (see Frisco Mktg. of NY LLC, 93 AD3d at 1353-1354; Tucker, 75 AD3d at 1097).
We agree with UHG/Optum defendants, however, that the court erred in denying the motion to the extent it sought partial dismissal of the fraudulent misrepresentation cause of action on the basis of the statute of limitations. Plaintiff commenced this action on August 15, 2022. A claim for fraudulent misrepresentation is governed by CPLR 213 (8), which sets forth a statute of limitations that is the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it (see Boardman v Kennedy, 105 AD3d 1375, 1376 [4th Dept 2013]). Plaintiff alleges that the fraud occurred from November 2013 to September 2019 and that it discovered the fraud in early September 2019. Inasmuch as this action was commenced more than two years after the discovery of the fraud, the two-year discovery provision is not relevant (see Parlato, 299 AD2d at 114 n 2). We conclude that the motion to the extent it sought partial dismissal on the basis of statute of limitations should have been granted, and we therefore modify the order by granting that part of the motion seeking to dismiss the fraudulent misrepresentation cause of action to the extent that it is based on any fraudulent acts occurring prior to August 15, 2016 (see Lane's Floor Coverings & Interiors, Inc. v DiLalla, 226 AD3d 593, 595 [1st Dept 2024]; Krog Corp. v Vanner Group, Inc., 158 AD3d 914, 918 [3d Dept 2018]; Parlato, 299 AD2d at 114).
With respect to plaintiff's cross-appeal, we reject plaintiff's contention that the court erred in granting the motion to the extent it sought dismissal of the negligent supervision cause of [*4]action. Assuming, arguendo, that New York and not Minnesota law applies to that cause of action, as plaintiff contends, we conclude that plaintiff fails to allege the first required element of that cause of action. Under New York law, to state a negligent supervision cause of action, the complaint "must include allegations that: (1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm; (2) the employer knew or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises or using property or resources available to the employee only through their status as an employee, including intellectual property and confidential information" (Moore Charitable Found. v PJT Partners, Inc., 40 NY3d 150, 157 [2023]). "[A] defendant is on notice of an employee's propensity to engage in tortious conduct when it knows or should know of the employee's tendency to engage in such conduct" (id. at 158). "An employer 'should know' of an employee's dangerous propensity if it has reason to know of the facts or events evidencing that propensity, and may be liable if it nonetheless 'place[s] the employee in a position to cause foreseeable harm' " (id.). "Put differently, the notice element is satisfied if a reasonably prudent employer, exercising ordinary care under the circumstances, would have been aware of the employee's propensity to engage in the injury-causing conduct" (id. at 158-159).
Here, plaintiff does not allege that UHG/Optum defendants had actual or constructive knowledge of the four employees' propensity to commit fraudulent acts (see 106 N. Broadway, LLC v Lawrence, 189 AD3d 733, 737 [2d Dept 2020]). At most, plaintiff alleges UHG/Optum
defendants should have been aware of Mann's propensity for fraudulent conduct, but Mann was not their employee.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court